LEWIS H. BLACKLEDGE ET AL., APPELLEES, V. FARMERS INDEPENDENT TELEPHONE COMPANY, APPELLANT.

FILED FEBRUARY 23, 1921.    No. 21176.

1. Telegraphs and Telephones: PHYSICAL CONNECTIONS OF TELEPHONE LINES. The statute requiring physical connections to be made between telephone companies (Rev. St. 1913, secs. 7414, 7417) applies to companies operating "trunk and toll" lines, and contemplates only the forwarding of messages when such lines are used.

2. ———: ———: POWERS OF STATE RAILWAY COMMISSION. The railway commission is, by the Constitution, given plenary power to regulate and control telephone companies which are operated as public utilities, but such powers are subject to the general constitutional limitations and subject to whatever specific legislation is enacted providing the manner and limit and extent that the power shall be exercised.

3. ———: ———: ———. Though at common law such public utilities could not be required to make physical connections of their telephone systems, the legislature or the railway commission may order such connections when public convenience and necessity require, provided that the company required to render the service

will receive proper compensation for the additional service which it renders, and that such conditions are imposed as will protect such company in its individual management and control of its own property, and that the order does not so operate as to create or allow of such discriminatory conditions as will cause injury to the company concerned.

4. ——: ——: ——: Due Process of Law. Where the railway commission, as a condition of an order requiring the physical connection of two companies, directs that the two companies shall divide all new business, in such proportions that the relation in size of the one company to the other shall not change but shall be continuously maintained so long as the order of exchange of service shall operate, the right of either company to accept as subscribers all who shall apply in the territory covered by their system is denied, and the effect of such order is to take the company's property without due process of law.

5. ——: ——: Power of Courts. A regulation requiring the exchange of service between telephone companies is legislative in character and cannot be modified, but must be either approved or set aside by the courts, except, however, such portions as are distinctly separable may be sustained or annulled as separate and independent regulations.

APPEAL from the State Railway Commission. *Reversed.*

*Howard S. Foe, Stiner & Boslaugh* and *W. M. Whelan,* for appellant.

*Lewis H. Blackledge* and *Bernard McNeny, contra.*

FLANSBURG, J.

Appeal from an order of the Nebraska State Railway Commission, requiring physical connection between telephone companies for the exchange of local service, as well as for the transmission of long-distance messages.

The Farmers Independent Telephone Company and the Lincoln Telephone & Telegraph Company, both Nebraska corporations, are engaged in the telephone business at Red Cloud, Nebraska. Each operates a local exchange, and in that business they are direct competitors. The Farmers company has, also, farm lines extending into the country, and has switching exchanges with certain other independent companies which operate small telephone

exchanges in neighboring towns. The Lincoln company has an extended business over the entire state and operates long-distance lines in connection with and as a part of the Bell system throughout the United States and Canada.

For some years prior to October 1, 1917, a physical connection had been maintained between the exchanges of the two companies at Red Cloud, and the subscribers of the Farmers company had been given the privilege of directly transmitting telephone messages over the Lincoln company's long-distance lines. By reason of the duplication of telephones, found necessary by many subscribers, and the other inconveniences incident to the division of the local business at Red Cloud between the two companies, a movement began among certain telephone users for the elimination of one or the other of these companies from the field. Meetings were held and an agreement reached by a number of citizens, to the effect that they would patronize the Farmers company exclusively. As a result, 84 of the Lincoln subscribers immediately transferred to the Farmers company. The Lincoln company, in the protection of its own interests, promptly discontinued the long-distance service formerly rendered the subscribers of the Farmers company. The Farmers company then made application to the railway commission for an order requiring the reestablishment of the long-distance service. In that proceeding the two complainants, who are citizens of Red Cloud, and telephone users, intervened; the one praying for an order to require the two companies to mutually exchange all telephone service, local as well as long-distance, and the other that the two companies be required to consolidate their telephone systems in Red Cloud.

The railway commission, after a hearing, entered an order requiring the Lincoln company to furnish long-distance service to subscribers of the Farmers company and to reestablish physical connection between the two plants for that purpose. It also ordered that the two companies make necessary physical connection, and that each be

required to receive and transmit all local calls, originating on the lines of the other, where destined to a subscriber on its own local lines. As compensation for the exchange of local service, the rates to all local subscribers of each of the companies were increased. All business subscribers were increased 75 cents a month, residence subscribers 20 cents a month, and farm and switching subscribers 10 cents a month. The railway commission then made a specific finding, to the effect that the above orders, if granted without other conditions, would work injuriously to the Lincoln company and would result in a practical confiscation of its properties at Red Cloud, since all of its subscribers would eventually, under the circumstances created, transfer to 'the Farmers' lines. It was therefore further ordered, avowedly as a protection to the interests of the Lincoln company, that the future local telephone business should be divided, and that neither company should accept new or additional local subscribers in numbers sufficient to change the proportion in size that one company bore to the other on October 1, 1917. The Farmers company appeals, complaining of all those provisions, except the order covering the long-distance service.

It is insisted that the statute, Laws 1913, ch. 79 (Rev. St. 1913, secs. 7414, 7417), requires only connections with trunk and toll lines, and not a general exchange of local business. The title and body of the act, we think, confirm this contention. The title of the act refers only to "trunk and toll" lines, and the body of the act also refers specifically to such lines and provides for the division of tolls for long-distance service only. It is also provided that the tolls for the transmission of each particular message shall be divided, in part, upon the basis of the number of miles of line furnished by the respective companies. We find nothing in the act, however, which attempts to limit the general power of the railway commission over telephone companies in so far as its action may go beyond and not be in conflict with the mandatory provisions of this act.

By the Constitution (article V, sec. 19a) the railway commission is given general power to regulate and control such companies according to its own judgment and discretion, subject to the general constitutional limitations, and except in so far as the legislature shall, by specific legislation, provide how, and limit to what extent, that power shall be exercised.

The railway commission has, then, full and plenary power, legislative in character, to control these companies, and to pass reasonable rules and regulations for the conduct of their business. It is authorized, in that regard, to exercise the police power of the state and that power of regulation and control which is impliedly reserved by the state in the grant of charters to such public utilities.

It is the contention of the Farmers company that a physical connection can be required between telephone companies only through a legislative enactment or by virtue of contract, and that the order of the railway commission goes beyond the provisions of the statute, above mentioned. It is true that, by the common law, public utilities owed no duty beyond their existing lines, and, therefore, no obligation to make physical connections or exchange service with each other. Each had the right to operate independently. Where the common law is not changed by legislation, a court would, therefore, find no authority upon which to base an order for such physical connections or exchange of service. *Home Telephone Co. v. People's Telephone & Telegraph Co.,* 125 Tenn. 270; *Pacific Telephone & Telegraph Co. v. Anderson,* 196 Fed. 699; *Home Telephone Co. v. Sarcoxie Light & Telephone Co.,* 236 Mo. 114, 36 L. R. A. n. s. 124; *State v. Cadwallader,* 172 Ind. 619, 87 N. E. 644 (on rehearing) 89 N. E. 319; *Pacific Telephone & Telegraph Co. v. Eshleman,* 166 Cal. 640, 50 L. R. A. n. s. 652.

The railway commission is, by the Constitution, delegated authority which is, in its nature, legislative, and the common law is not a limitation upon that power. Its orders, as well as the statutory enactments of the legisla-

ture, must meet constitutional requirements, and must not be oppressive nor arbitrary, nor disregard substantial property rights.

The question arises whether or not the order of the railway commission in this case, based in part upon the statute mentioned, and in part a direct exercise of its own power, can be justified as a reasonable regulation of the business and service of these companies, or does it offend against those constitutional inhibitions, prohibiting the taking of property without due process of law, or without just compensation?

Although it has been held (*Pacific Telephone & Telegraph Co. v. Eshleman, supra*) that, to require physical connection between different telephone systems and to compel one company to furnish the service of its lines to the patrons of the other company, cannot, under any conditions, be justified as a regulation, but must be considered a taking of property, and that it can only be accomplished through the exercise of the power of eminent domain, it is now quite universally recognized that the state, or its delegated authorities, may, in the exercise of its police power or its power to regulate public service corporations, compel such physical connections and compel the one company to furnish its wires for the transmission of messages originating on the other company's lines, provided that an arrangement is made so that the company required to render the service will receive proper compensation for the additional service which it renders, and that such conditions are imposed as will protect such company in its individual management and control of its own property, and that the order does not so operate as to create or allow of such discriminatory conditions as will cause injury to the company concerned. *Pacific Telephone & Telegraph Co. v. Wright-Dickinson Hotel Co.*, 214 Fed. 666; *Pioneer Telephone & Telegraph Co. v. State*, 177 Pac. (Okla.) 580; *Pioneer Telephone & Telegraph Co. v. State*, 77 Okla. 216; *Pioneer Telephone & Telegraph Co. v. State*, 78 Okla. 38; *Wisconsin Telephone Co. v. Railroad Commission*, 162 Wis. 383; *Michigan*

*State Telephone Co. v. Michigan Railroad Commission,* 193 Mich. 515; *State v. Skagit River Telephone & Telegraph Co.,* 85 Wash. 29; *Southwestern Telegraph & Telephone Co. v. State,* 150 S. W. (Tex. Civ. App.) 604; *Idem,* 109 Tex. 337; *City of Milbank v. Dakota Central Telephone Co.,* 37 S. Dak. 504.

Whether the regulation is made by the order of the railway commission, or by legislative enactment, it can, in either event, be upheld only after providing an equitable adjustment of the rights involved.

The principle of requiring such physical connection of lines in furtherance of public service and for the public convenience was first recognized as applied to railroads. *Michigan Central R. Co. v. Michigan Railroad Commission,* 236 U. S. 615; *Wisconsin, M. & P. R. Co. v. Jacobson,* 179 U. S. 287; *State of Washington v. Fairchild,* 224 U. S. 510.

When a telephone company procures a connection, so as to be allowed the use of long-distance wires of another, or where two companies are required to connect their long-distance toll lines, the toll charges, being based on distance of transmission of messages, may be so apportioned that each company will get compensation for just such part of the services that it renders in the transmission of each individual message. To that extent there is a clear analogy in principle to the rule as applied to railroad companies, where the transportation charges are automatically apportioned between the two companies, one company receiving compensation for that part of the service rendered up to, and the other beyond, the connecting point.

Where two telephone companies are competing for local business and one of them has long-distance lines which it has been compelled, by regulatory order, to furnish to the patrons of the other company, it has, in some instances, been found necessary, in order to maintain an equality between the companies and to insure a proper compensation to the company furnishing additional service, to

provide a switching charge against patrons of the other company, to be collected in addition to the regular toll rates charged to the subscribers of the company having the long-distance lines. *Wisconsin Telephone Co. v. Railroad Commission, supra; Southwestern Telegraph & Telephone Co. v. State, supra; Pacific Telephone & Telegraph Co. v. Wright-Dickinson Hotel Co., supra.*

The order of the railway commission, in the case here before us, requires an exchange of all local service, and provides a flat rate, instead of an individual switching charge, as compensation for the additional service to be rendered by the respective companies. The local service of these companies as to their own subscribers is also not based upon toll rates, but on a flat rate per month, so that there is not the same opportunity for apportioning the compensation between the companies for the transmission of a message from the lines of one over the lines of the other, as there is where the two companies are operating their lines on toll charges. No complaint is made that a flat rate cannot be justified in place of a toll rate, and we do not now see any reason why a flat rate would prevent a possibility of proper apportionment of compensation between the companies, where the service, upon which the flat rate is to be based, is of such a uniform character that such a rate would work reasonably and equitably as to all concerned, and would result in no discrimination.

The order under consideration gives to each of the companies, alike, an increase of 75 cents for business telephones, 20 cents for residence telephones, and 10 cents for farm telephones, but the telephone rates of these two companies, to which these increases are to be added, are not the same. The Lincoln company's rates are from $2 to $2.50 a month for business service, and from $1 to $1.50 for residence service, while the Farmers company's rates are $1.50 for business service and $1 for residence service. By the order entered, there is an effectual consolidation of the service of these two companies by which a subscriber of the one company appears to receive practically the same

service as a subscriber of the other company. The rates to the subscribers of the Farmers company are, however, under this arrangement, considerably lower. Furthermore, it would appear that the use of the Lincoln company's higher rate lines would be more valuable than the use of the Farmers' lines. It is the service of these lines that the two companies are required to exchange, and yet the one company receives no more for the service than the other.

The matter of the fixation and adjustment of the conditions and of rates, where an exchange of service is ordered, is one exclusively for the railway commission, and not for the courts. The one function of the court is to determine whether such an order as has been made can be legally justified. The commission has apparently not attempted to work out a system of rates and charges which would work as an equitable foundation for an exchange of service, and this may have been for the reason that it considered such could not be done. However that may be, the findings of the commission show that the Lincoln company has sustained a considerable loss of patronage by reason of the Farmers company's competition, which has the advantage of local ownership; and the commission further finds that the requirement for an exchange of local and long-distance service, as covered by those portions of the order that we have just discussed, will in practical effect work a confiscation of the Lincoln company's property through the process of a complete loss of its local subscribers to the other company, unless some provision is made in the order which will afford protection. Such an order, to be sustained, must be one that will operate reasonably, and not be arbitrary, nor violate constitutional inhibitions. Unless a reasonable adjustment can be made where the Lincoln company can be protected against such a detriment and substantial loss as the railway commission's findings show that it will otherwise suffer, it seems clear to us that this company cannot legally be forced to furnish either long-distance or local service

105 Neb.—46

to the patrons of its competitor. *Pioneer Telephone & Telegraph Co. v. State,* 177 Pac. (Okla.) 580, *supra.* For, as said in the case just cited: "A connection, under rules and regulations that amount to the destruction of property, or that works a discrimination against the subscribers of either exchange, would amount to the taking of property without due process of law. The state, of course, has the power to take private property for public use under its rights of eminent domain; but this can only be done for a fair consideration. The section of the constitution contemplates the physical connection and the regulation of such union under the police powers of the state."

The order of the railway commission contains a provision calculated to protect the Lincoln company; it is that all new business shall be divided in such proportions between the companies that the relation in size of the one company to the other shall not change but shall be continuously maintained throughout all future growth, or so long as the order for exchange of service shall operate.

Serious inconvenience is a necessary result of having two local telephone companies in operation side by side, and, though such duplication cannot be justified from an economic standpoint, it must be remembered that these companies each received a franchise to operate in the same locality and that they have built plants and extended their lines throughout the territory granted. Their expenditures and investments have been based upon the public grant and their rights have become vested. It must be remembered also that these companies owe a duty to the public. They not only have the right to seek subscribers in the territory where they are operating, but all persons wishing to become subscribers have the reciprocal right to demand that they shall become such subscribers and that the service of that public utility which they choose shall be rendered to them. To grant to such a company the right to construct a telephone line, and then later to deny it the right to have all persons along that line connect with it as subscribers, is to take away the very grant that has been

Blackledge v. Farmers Independent Telephone Co.

given. It is to deny the company the very use of the property for which the property was especially constructed. Statutes have been passed in some states providing that a public utility shall not extend its lines into new territory unless it shall have procured a certificate from a regulatory commission, showing that the territory is not already adequately served and that public necessity and convenience require additional service. The order here cannot be justified on the principles underlying those regulations. Those regulations, when within reasonable limits, do not affect vested rights, but deal only with an extension of grants to such companies into territory not theretofore served by them. We do not hesitate to say that the order of the railway commission, requiring the division of new business, cannot be legally justified, and is the taking of property rights without due process of law.

The provision as to the division of such new business is so correlated and interdependent with the other provisions of the order that it cannot be separated from them. The order of the railway commission in this case is an entirety. It cannot be divided into separate and independent orders. It is, furthermore, a regulation, legislative in character, and cannot be modified or changed by this court. The order, as found, must, so far as the power of this court goes, be either approved or set aside. *Omaha & C. B. Street R. Co. v. Nebraska State Railway Commission*, 103 Neb. 695; *Nebraska Telephone Co. v. State*, 55 Neb. 627; *People v. McCall*, 245 U. S. 345; *Minneapolis, St. P. & S. S. M. R. Co. v. Railroad Commission*, 136 Wis. 146; *Hooper Telephone Co. v. Nebraska Telephone Co.*, 96 Neb. 245.

For the reasons given, the order of the railway commission is annulled and set aside, without prejudice to the rights of any of the parties concerned to further proceedings before the commission, for the purpose of arriving at some reasonable regulation for the exchange of service, under such conditions, if they can be found in this case, as will be legally justifiable and within constitutional limits.

REVERSED.