Ernest W. Gilman et al

*vs.*

Somerset Farmers Co-Operative Telephone Company et al.

Somerset.      Opinion July 26, 1930.

*Ames & Ames*, for complainants and Somerset Farmers Co-Operative Telephone Co.

*Cook, Hutchinson, Pierce & Connell,*
*Locke, Perkins & Williamson,*
*George R. Grant*, for Maine Telephone and Telegraph Co.

SITTING: PATTANGALL, C. J., DUNN, STURGIS, BARNES, FARRING-TON, JJ. MORRILL, A. R. J.

DUNN, J. Upon complaint and after notice and hearing, the Public Utilities Commission ordered and required a physical connection of the lines of the Maine Telephone and Telegraph Company and those of the Somerset Farmers Co-Operative Telephone Company, in localities where both maintain exchanges, to afford public telephone service, beyond the reach of either line alone, chiefly for other than local conversations.

The Commission also required the transfer of messages from the lines of the Maine Company to those of the Somerset Company, and vice versa, "at the point of connection nearest the origin of the call."

The Maine Company, to abbreviate its name for convenience of expression, noted ten exceptions. By agreement of the parties, the exceptions are here on certification. R. S., Chap. 55, Sec. 55.

The exceptions may be readily grouped into three classes. In the first class is a single exception. This exception attacks the jurisdiction of the Commission on the ground that the Somerset Company is not a public utility. Exceptions in the next class assert findings of fact to be unsupported by any substantial evidence. In the third class, exceptions allege that the requirement, respecting the transfer of messages, exceeds the delegation of regulatory power.

The statute, R. S., Chap. 55, Sec. 41, enacted in 1913, conferring on the Commission jurisdiction over public utilities of this kind, is as follows:

"Whenever the commission, after a hearing had upon its own motion or upon complaint, shall find that a physical connection can reasonably be made between the lines of two or more telephone companies . . . whose lines can be made to form a continuous line of communication, by the construction and maintenance of suitable connections, for the transfer of messages or conversations, and that public convenience and necessity will be subserved thereby, . . . the commission may, by its order, require that such connection be made, except where the purpose of such connection is primarily to secure the transmission of local messages or conversations between points within the same city or town, and that conversations be transmitted and messages transferred over such connection under such rules and regulations as the commission may establish . . ."

The Maine Company, the brief of its counsel concedes, is a public utility.

The Somerset Company, so to refer to it, was incorporated in 1904, under the general incorporation laws of this State, to establish telephone lines on the public highways in the towns of Somerset county.

Without quoting verbatim the wording of the certificate of organization, the principal corporate purpose is to facilitate tele-

phonic communication by and between residents in the farming districts, to whom service shall be at cost.

The corporation owns and operates eleven central offices, or exchanges, through which, in an area comprising twenty-three towns and plantations, flat-rate telephone service, and no other, is, in conformity to a by-law of the corporation, furnished stockholders only.

Each service user provides the facilities from the street to his premises, and together the users pay the company an amount sufficient to cover upkeep and operating expenses. The by-law restricts a user to not more than two telephones. Nine hundred and twenty-five is the approximate number of telephones in use. The stretch of wire is, in round numbers, one thousand miles.

The Somerset Company also operates pay stations, open to the general public, under a schedule of toll rates, filed, as are the other schedules of the company, with the Public Utilities Commission. Of gross annual receipts averaging, it is accurate enough to say, $18,000, approximately one-eighth is from the pay stations.

Is the Somerset Company a public utility?

To the consideration of this question this opinion, after recitals to make the whole outline of the case visible, will return.

In Skowhegan and Madison, the only two Somerset county towns where the Maine competes with the Somerset Company, the former has upwards of fifteen hundred subscribers.

The Maine Company also owns and operates toll lines reaching from town to town within, and even beyond, Somerset county. And, by arrangement with the New England Telephone and Telegraph Company (the New England being of the Bell system), the Maine Company furnishes connection to the telephone world.

In 1926, the Maine and Somerset companies entered into a joint traffic agreement, terminable by either party on notice to the other.

On one day in 1928, the Somerset Company had notification that, eight days later, the Maine Company would cancel the agreement. Not to inconvenience the public, ran the notice, the Maine Company would continue interchanging traffic, but on different terms. Actual severance of the connected lines was by the Somerset Company, on February 10, 1929.

The complaint bears date February 11, 1929.

Many, perhaps all, of the twenty-six complainants, were then users of the Somerset service.

To return to the question whether, within the meaning of the statutes, the Somerset Company is a public utility, the statutes make every person, natural or artificial, owning, conducting, operating, or managing a telephone line for compensation, a telephone company, and every such telephone company, a public utility. R. S., Chap. 55, Sec. 15.

The test, then, as to whether telephone service is being furnished by a public utility, is whether the owner or operator, furnishing the service, has a right to transmit, and is ready to transmit, conversations and messages, not necessarily for the benefit of the whole public, or even a large part thereof, but to all persons similarly situated, without partiality or unreasonable discrimination, in equality of right, to the extent that capacity may admit of use, for compensation.

Whether, in a legal sense, the term, "compensation," of the statute, and the word, "cost," used in the by-law, are in meaning not the same, it is unnecessary to decide, because decision of this case turns on another hinge.

It may, indeed, be that, merely in serving its stockholders "at cost," the Somerset Company is not a public utility.

But, alone, this would not preclude furnishing service as a public utility.

In affording, not in main corporate purpose, but, nevertheless, in corporate purpose, means for telephonic communication from pay stations, and inviting the general public to use such stations, under an established schedule of toll rates, the Somerset Company has impressed its property by a public use, and, in consequence thereof, its business, certainly in such regard, is that of a public utility.

What a telephone company does, not what its by-law says, neither affirmative provision of the corporate charter nor other provision of law prohibiting, is the important thing. *Terminal Taxicab Company* v. *Kutz*, 241 U. S., 252, 60 Law. ed., 984.

Both respondents being public utilities, the Public Utilities Commission had jurisdiction of the complaint, and power to require a physical connection of the lines of the respective systems, on proof that a mechanical connection of the lines, to form a continuous line of communication, for public convenience and necessity, but not "primarily to secure the transmission of local messages or conversations between points in the same city or town," would be reasonably possible.

Questions of fact pertaining to a case are for consideration and decision by the Public Utilities Commission.

If a factual finding, basic of an order of the Commission, is supported by any substantial evidence, that is, by such evidence as, taken alone, would justify the inference of the fact, the finding is final. *Hamilton* v. *Caribou, etc., Company*, 121 Me., 422, 424. Here, as with a jury verdict, a mere difference of opinion between court and commission, in the deductions from the proof, or inferences to be drawn from the testimony, will not authorize the disturbance of a finding.

. On the other hand, whether, on the record, any factual finding, underlying order and requirement, is warranted by law, is a question of law, reviewable on exceptions. *Hamilton* v. *Caribou, etc., Company*, supra.

In the case at bar, the evidence, though sharply conflicting, was sufficient to justify finding that physical connection of the lines of the two companies to form a continuous line of communication, that is, a connection of the lines and not of the companies, essentially for other than local telephonic intercommunication, would be reasonably practicable and capable of execution and serve or further public convenience and necessity. Of such cases only is the statute inclusive.

The exercise of sovereign power, lest it become tyrannical, is bound down by constitutional chains.

Section 21, Article 1, of the Constitution of Maine provides:

"Private property shall not be taken for public uses without just compensation; nor unless the public exigencies require it."

The Maine Company holds a franchise to own and operate, and is operating, as a public utility, a telephone line or system. The franchise is incorporeal property. The exercise of the franchise necessitates a plant, equipment, and other tangible property.

The Public Utilities Commission, like the Legislature which created it, may require reasonable connection of public utility telephone lines, so long as there is no interference with individual ownership and use, save to complement service by the transmission of messages from other lines. *Blackledge* v. *Farmers', etc., Telephone Co.* (Nebr.), 181 N. W., 709; *Pioneer Telephone, etc., Co.* v. *State* (Okla.), 177 Pac., 580; *State* v. *Skagit River Telephone, etc., Co.* (Wash.), 147 Pac., 885; *Pacific Telephone, etc., Co.* v. *Wright-Dickinson, etc., Co.*, 214 Fed., 666; *City of Milbank* v. *Dakota, etc., Co.* (S. D.), 159 N. W., 99.

The power to regulate the use and enjoyment of property is widely different from the power to appropriate or take property. Property and property rights are assertible against regulatory power. *New England Telephone, etc., Co.* v. *Department Public Utilities*, 262 Mass., 137.

Not only did the Public Utilities Commission require physical connection of the lines of the Maine and Somerset companies, but the Commission required that any message originating on the lines of the Maine Company, within territory served by both companies, and designed for the lines of the Somerset Company, be transferred to the latter company at the nearest "point of connection," i.e., the exchange of the Somerset Company first on the way.

The requirement would result, put in practice against the Maine Company, in the case of a message originating on the lines of that company, in a locality where both it and the Somerset Company have exchanges, the message being designed for the Somerset lines, in no transmission of the message by the Maine Company, but in immediate and complete reference of the particular business to the Somerset Company.

Again, a message originating on the lines of the Maine Company, in a place where there is no Somerset exchange, and designed for the Somerset lines, would have to be transferred to the Somerset Company, not following transmission by the Maine Company for

the distance reasonably possible on its own lines, but at the exchange of the Somerset Company nearest the origin of the message.

That like requirement was defined, theoretically as an equalization feature, with regard to messages originating on the lines of the Somerset Company, does not militate against the exceptions by the Maine Company. The Constitution is not to be satisfied in such manner.

Nor does the provision that all traffic interchanged shall be subject to the toll rates of the Maine Company, and its connecting companies, weigh against the exceptions. It would be unreasonable to interpret the order that, though the lines of the Maine Company are idle, because the Commission forbids their use, yet the Maine Company shall have tolls as though on its lines had been that transmission which, but for the inhibitory order, there might have been.

What that order means is that the rates on the different lines, for like service, shall be uniform, and that the Maine Company shall have recompense for actual transmission only.

The principle of requiring physical connection of telephone lines, for public convenience and in furtherance of public necessity, was first recognized as applied to railroads. *Michigan Central Railroad Company* v. *Michigan Railroad Commission*, 236 U. S., 615, 59 Law ed., 750. As to railroad companies, transportation charges are automatically apportioned between the two carriers, one receiving compensation for that part of the service rendered up to, and the other beyond, the connecting point. Analogy is apparent.

Requirement, fair and reasonable, that one public telephone utility connect its lines with those of another, would not amount, in a constitutional sense, to a taking of property. But, in the words of a witness for the complainants, "a connection unreasonably depriving a telephone company of the right to use its own lines, is an injustice."

The Public Utilities Commission may, to some extent, affect and curtail the property and property rights of public utilities, but the Commission may not, under the guise of supervision, regulation, and control, take such property and rights. Property and

property rights may not be taken, except the taking be by eminent domain. *New England Telephone, etc., Co.* v. *Department of Public Utilities*, supra.

In the instant case the Public Utilities Commission has transcended its powers.

*Exceptions sustained.*