EVERETT T. CHAPMAN, RE: PETITION TO AMEND
COMMON CARRIER CERTIFICATE NO. 71.
CONGDON TRANSPORTATION, INTERVENOR.

Kennebec.    Opinion, June 16, 1955.

*Robert B. Dow,*
*Paul A. Choate,* for petitioner.

*Raymond E. Jensen,* for intervenor.

*Frank M. Libby,* for Public Utilities Commission.

SITTING: FELLOWS, C. J., WILLIAMSON, WEBBER, BELIVEAU,
TAPLEY, JJ.  MR. JUSTICE TIRRELL sat at the time of argu-
ment and took part in conferences but died before writing
of opinion.

WILLIAMSON, J.   This case arises on exceptions to a decree of the Public Utilities Commission. R. S., c. 40, § 66 (1944), now R. S., c. 44, § 67 (1954). The petitioner sought and obtained, insofar as we are here interested, an amendment to his common carrier certificate "to authorize service from and to Portland-South Portland to and from Raymond, South Casco and Naples. . . ."  Congdon Transportation, a common carrier serving the same points, was permitted to intervene.

In its decree the Public Utilities Commission found:

> "After a consideration of all the evidence we are of the opinion that a public necessity exists for this later scheduled (the petitioner's) service and that public convenience will be promoted thereby, and that the granting of the authority herein requested will not seriously affect the existing transportation facilities."

Exceptions taken by the intervenor to the findings and to the amendment of the decree based thereon raise one issue: Are the findings of fact supported by any substantial evidence, that is, by such evidence as taken alone would justify the findings?

The pertinent part of the statute relating to operation of motor trucks for hire reads:

> "After such hearing, the commission shall have the power to issue to the applicant a certificate in a form to be prescribed by the commission, declaring that public convenience and necessity require the operation for which application is made, or refuse to issue the same, or to issue it for the partial exercise only of the privilege sought. . . In determining whether or not such a certificate shall be granted, the commission shall take into consideration the existing transportation facilities and the effect upon them, the public need for the service the applicant proposes to render, the ability of the applicant efficiently to perform the service for which author-

ity is requested, conditions of and effect upon the highways involved and the safety of the public using such highways. No such certificate shall be issued unless and until the applicant has established to the satisfaction of the commission that there exists a public necessity for such additional service and that public convenience will be promoted thereby. . ."

R. S., c. 44, § 19 (1944), now R. S., c. 48, § 20 (1954).

The rule of law governing our consideration of the exceptions was settled at an early date in the history of utility regulation.

"The facts on which the rulings of the Commission are based must be either agreed to by the parties or be found by the Commission. Facts thus determined upon are not open to question in this court, unless the Commission should find facts to exist without any substantial evidence to support them, when such finding would be open to exceptions as being unwarranted in law." *Hamilton* v. *Power Co.*, 121 Me. 422, 424, 117 A. 582 (1922).

"Questions of fact pertaining to a case are for consideration and decision by the Public Utilities Commission.

"If a factual finding, basic of an order of the Commission, is supported by any substantial evidence, that is, by such evidence as, taken alone, would justify the inference of the fact, the finding is final. *Hamilton* v. *Caribou, etc., Company*, 121 Me. 422, 424. Here, as with a jury verdict, a mere difference of opinion between court and commission, in the deductions from the proof, or inferences to be drawn from the testimony, will not authorize the disturbance of a finding." *Gilman et al.* v. *Somerset Farmers Co-operative Tel. Co., et al.*, 129 Me. 243, 248, 151 A. 440 (1930).

See also *Public Utilities Comm.* v. *Johnson Motor Trans.*, 147 Me. 138, 84 A. (2nd) 142 (1951) ; *O'Donnell, Petitioner,* 147 Me. 259, 86 A. (2nd) 389 (1952); *Public Utilities Comm.* v. *Gallop,* 143 Me. 290, 62 A. (2nd) 166 (1948); *Utilities Commission* v. *Water Commissioners,* 123 Me. 389, 123 A. 177 (1924).

"When the Commission decides a case before it without evidence, or on inadmissible evidence, or improperly interprets the evidence before it, then the question becomes one of law." *Central Me. Power Co.* v. *Public Utilities Comm.,* 150 Me. 257, 261, 109 A. (2nd) 512 (1954) ; *N. E. Tel. & Tel. Co.* v. *Public Utilities Comm.,* 148 Me. 374, 377, 94 A. (2nd) 801 (1953).

The issue may be narrowed to whether the findings of public convenience and necessity are based on any substantial evidence. Other findings are not questioned by the intervenor. The meaning of the phrase "public convenience and necessity" has been stated by our court in these words:

> ". . . the convenience and necessity, proof of which the statute requires, is the convenience and necessity of the public, as distinguished from that of any individual, or group of individuals." *Re: John M. Stanley,* 133 Me. 91, 93, 174 A. 93 (1934).

In an opinion rendered before the inclusion of "public convenience and necessity" in the statute, the court held the act "to vest in the Commission a broader discretion, having in view not only the necessity and convenience, but the general welfare of the public." *Motor Coaches* v. *Public Utilities,* 125 Me. 63, 66, 130 A. 866 (1925). See also 60 C. J. S., Motor Vehicles § 90; 37 Am. Jur., Motor Transportation § 12.

The facts are not seriously in dispute. The difficulty lies in the application of the law to the facts. The petitioner in his testimony throws no light on the proposed service. In substance he testified that he desired a certificate, and that

is the total extent of his contribution to the picture. The petitioner then produced a witness or witnesses from each of the towns for which he was granted a certificate.

Mr. Fortier from Casco runs a summer hotel or resort in South Casco. Sometimes he needs supplies for an evening meal, and it would be a convenience to his business if there was a transportation service available for this need. In answer to the question, "How often would you need that service, Mr. Fortier?" he replied, "That is hard telling. Not too often, I don't think." Mr. Crockett, operator of a summer resort in South Casco, testified in substance that he was not satisfied with the existing schedules of Congdon Transportation, the intervenor, and Bartlett, another carrier serving Casco in some degree. He believed with the petitioner in the field he could order goods from Portland as late as 1:30 P.M., instead of 10:00 A.M., and obtain them by 4:30 P.M., instead of 5:30 or 6:00 P.M. The witness did not know what kind of a schedule the petitioner would maintain. His complaint against the intervenor was stated in these words: "If we require service we should have service. What service you give is perfectly all right but your schedule doesn't work out to our advantage." There is nothing in the record to show that the witness ever complained to the intervenor, the Commission or anyone prior to the hearing.

We are left with evidence, taken most favorably to the Commission, that shows no more than the inability of two summer resort proprietors to obtain more expeditious delivery service on occasional small shipments. This evidence in our opinion lacks the substance required to form the basis of a finding of public convenience and necessity.

In the case of Raymond, the only witness, treasurer of a company manufacturing products for the electronics industry, testified in substance that their shipments both incoming and outgoing are almost entirely interstate and not

intrastate. Shipments originating at or destined for Portland are few in number, and are "negligible so far as total amount of freight goes." The witness also testified in substance that "the only service that was available that was at all reliable would entail a delay of some one to three days in transportation—a difference from what it was if we hauled our stuff to Portland and shipped direct."

How the proposed service by the petitioner would relieve this situation of days of delay was not stated. The evidence lacks substance. As in the case of Casco, the Commission erred in finding the elements of public convenience and necessity.

In the case of Naples, a witness engaged in a construction and garage business testified for the petitioner. In answer to the question, "Do you feel at the present time there are adequate facilities for trucking your supplies in and out of Naples?" he replied, "The answer could be yes or no. If you want it soon, the answer is no." He believed that if the petition was granted, "Certainly if we needed anything (from Portland) before noontime we would get it late in the afternoon which would be quite an advantage." Most of his shipments originate in Portland, with less than 5% from Naples. Only once in a while does he need anything in a hurry in his construction business. The petitioner did not tell the witness what service he would offer, "but I could see where it could be very beneficial."

Letters from a business man in Naples and a wholesale automotive business in Portland in favor of the petitioner were introduced by agreement in the record. In eight years in the garage business the witness had never talked with any of the carriers serving Naples, except the petitioner, who had an interstate service. In particular, he had never talked with the intervenor about adequacy of service.

In Naples, as in Casco and Raymond, we are left with a record which falls short of establishing that the proposed

service would serve the public convenience and the public necessity. At most, it would be more convenient should the interstate trucks of the petitioner stop to take and deliver the intrastate goods. It may be noted that in Casco, the evidence related to the summer resort business, and in Naples largely to the garage business. We may fairly assume that the garage business reaches a peak in this area in the summer months. The evidence touches, not at all, or at best very lightly, year around business in the several towns. In Raymond, as we have indicated, the complaint chiefly relates to interstate business.

It will serve no useful purpose to discuss the evidence in greater detail. There is no mathematical formula to be applied by the Commission, or by the court, in reaching or passing upon findings of public convenience and necessity.

Without question, the proposed service of the petitioner would be of some convenience to the hotel proprietors, to a lessor degree to the garage in emergencies, and to the manufacturing plant in Raymond, and no doubt to others as well. We are unable to find any evidence of a substantial nature pointing to the convenience and necessity of the public. Accordingly, we conclude that the Commission erred in making their decree.

*Exceptions sustained.*

*Case remanded to the Public Utilities Commission for a decree upon the existing record in a c c o r d a n c e with this opinion.*