CENTRAL MAINE POWER CO.
RE: CONTRACT RATE FOR OTHER UTILITIES—
MAINE CONSOLIDATED POWER COMPANY

Kennebec.   Opinion, April 3, 1956.

*Everett H. Maxcy,* for Central Maine Power Company.

*Locke, Campbell, Reid & Hebert,*
for Maine Consolidated Power Company.

SITTING: FELLOWS, C. J., WILLIAMSON, WEBBER, BELIVEAU, TAPLEY, JJ.   MURRAY, A. R. J.   CLARKE, J., did not sit.

WILLIAMSON, J.   This case is before us on exceptions by the respondent Maine Consolidated Power Company to a decree of the Public Utilities Commission establishing an

increase in the rate for electric energy supplied by the petitioner Central Maine Power Company. R. S., c. 44, § 67. On complaint of the petitioner, the Commission found the rate then in effect under a contract between the petitioner and the respondent, both public utilities, was "unjust, unreasonable and unjustly discriminatory," and granted a proposed increase. R. S., c. 44, §§ 55, 62.

The three grounds of the exceptions are:

(1) that the decree is not supported by substantial evidence;

(2) that the Commission did not make specific findings of fact on which to base its decision, although so requested by the respondent;

(3) That the Commission erred in finding that the so-called 1948 amendment to the contract between the utilities was valid.

We turn to the second exception relating to findings by the Commission. Under Section 67 "questions of law may be raised by alleging exceptions to the ruling of the commission on an agreed statement of facts or on facts found by the commission. . ." Our court has said that, "it is clearly the duty of the Commission under the statute, at least, if requested by any of the interested parties, to set forth in its orders and decrees the facts on which its order is based, otherwise the remedy provided by the statute for any erroneous rulings of law may be rendered futile." *Hamilton* v. *Power Co.,* 121 Me. 422, 425, 117 A. 582; *Casco Castle Co., Petitioner,* 141 Me. 222, 42 A. (2nd) 43.

The analogy with the statutory requirement in equity is close. "Upon request of either party, the justice hearing the cause shall give separate findings of law and fact." R. S., c. 107, § 26. *Sacre* v. *Sacre,* 143 Me. 80, 55 A. (2nd) 592; *Woodsum, et al.* v. *Portland R. R. Co., et al.,* 144 Me.

74, 89, 65 A. (2nd) 17. See also Rule 52 (a) Federal Rules of Procedure, 28 U. S. C. A. 13; *Kweskin* v. *Finkelstein,* 223 F. (2nd) 677 (7th Cir. 1955).

The test is whether there has been a fair compliance with the statute. See *Pub. Serv. Comm'n* v. *Wis. Tel. Co.,* 289 U. S. 67. The Commission in its decree stated the basic facts briefly to be sure, but nevertheless adequately within the spirit of the rule. The pertinent facts agreed upon by the parties and found by the Commission are: The contract between the utilities with amendments and "decrees of the Commission in F. C. #1410, under which the petitioner was authorized to increase its rates, tolls and charges for electric energy by an aggregate amount of $2,520,000" were introduced in evidence. No question about such facts, apart from the validity of the so-called 1948 amendment, is raised by the respondent. We quote the following findings from the decree:

> "The additional revenue provided by Supplemental Decree No. 4 in F. C. #1410 falls short of the additional revenue of $1,100,000 allowed and provided by the rates approved in Supplemental Decree No. 3, by $18,208, the amount of additional revenue designed to be produced by the said Class V-2 Rate. (the rate under discussion)
>
> \* \* \* \* \* \* \*
>
> "It is acknowledged that recently the petitioner was granted a general rate increase of about 10% by decree of this Commission, *Central Maine Power Co.* vs. *Public Utilities Commission, F. C. #1410,* Supplemental Decrees No. 3 and No. 4. See also same case in 150 Me. 257. The record herein, including the records and decrees in F. C. #1410, show that the petitioner is entitled to an overall increased return which must be paid for by its consumers. The portion of that increase which will affect this customer is about $18,000. If that amount is not allowed the petitioner at all, its rates will be insufficient to give it a fair and rea-

sonable total return and will adversely affect the general public if the petitioner is thereby unable to render proper service. On the other hand, if this amount is allowed the petitioner and yet absorbed by other customers, they in turn will be paying unjust, unreasonable and discriminatory rates. The Commission finds it to be in the public interest that the general rate increase be divided among all customers of the petitioner, including the respondent, approximately equally."

In substance the present controversy is part of the Central Maine Power Company general rate case known as F. C. #1410. There is no reason for us to blind ourselves to the understanding by all concerned that the issues about the V-2 rate should be separated from the general rate case for later disposition.

Neither party requested or expected the Commission to value again the properties of the Central Maine Power Company or to determine again the need for additional income or the amount thereof, or to review again in any manner the conclusions reached in F. C. #1410. This is not a rehearing of a general rate case involving the petitioner's entire system.

The point of the second exception lies not in the sufficiency of the evidence, but in the sufficiency of the findings in the decree to form an adequate basis for review on exceptions. No precise limitations on the rule of "fair compliance" can be stated. Much depends upon the issues and the accepted background of each case. A statement of the facts on which the petitioner's general rate increase was based in F. C. #1410 would have served no useful purpose. The increase was a fact accepted and unquestioned by the respondent. From the decree we know what the Commission found and the factual basis for its decision. There is no necessity in our view that the decree be vacated and the cause remanded for findings of fact and entry of a new decree.

The first exception directly raises the issue of whether the present rate is unjust, unreasonable, insufficient or unjustly discriminatory. The facts may be briefly restated: At the close of F. C. #1410 with an increase of about 10% in rates the petitioner lacked $18,000 of authorized income. This amount is obtainable by a like increase in the rate to be paid by the respondent.

It is clearly the law that utility rates established by contract as here may be set aside by the Commission when the rates are no longer fair. Such rates are presumed to be reasonable and just until otherwise determined. *Guilford Water Company,* 118 Me. 367, 108 A. 446; *Searsport Water Co. & Lincoln Water Co.,* 118 Me. 382, 108 A. 452. The burden is upon the petitioner to establish before the Commission the need for revision of the rates. On review, however, we do not reach the question of burden of proof. The findings of fact by the Commission must stand if supported by any substantial evidence. *Everett T. Chapman, Re: Petition to Amend,* 151 Me. 68, 116 A. (2nd) 130; *Central Maine Power Company* v. *Public Utilities Commission,* 150 Me. 257, 109 A. (2nd) 512; *New England Tel. & Tel. Co.* v. *Public Utilities Commission,* 148 Me. 374, 94 A. (2nd) 801; *O'Donnell, Petitioner,* 147 Me. 259, 86 A. (2nd) 389; *Public Utilities Commission* v. *Gallop,* 143 Me. 290, 62 A. (2nd) 166; *Gilman* v. *Telephone Co.,* 129 Me. 243, 151 A. 440; *Hamilton* v. *Power Company, supra.*

The respondent contends that the additional annual income of $18,000 from the proposed rate is insignificant when measured against the petitioner's total income, and thus failure of the petitioner to obtain an increase over the present contract rate cannot adversely affect the public interest. In other words, it says the facts stated are not substantial evidence on which to base the decree.

The amount involved, $18,000, is unquestionably small in comparison with petitioner's total gross revenue of $29,-

500,000 reported in October 1954. It is less than 1% of the total increase of $2,520,000 authorized in the general rate case. We may well agree that the petitioner's ability to perform its obligations to the public will not be hampered materially if the contract rate is maintained without increase. The respondent's argument, unsound in our view, leads to the conclusion that a given rate within a utility system should not be increased provided sufficient income is obtainable elsewhere.

The governing principle in adjustment of rates is more equitable. If rates must increase, all should bear the burden. Surely the customer whose rate is last to be considered should not escape a general increase for the reason that he is last in line or that sufficient income has been raised elsewhere.

Our Public Utilities Commission, in an early case, said:

> "Rates may be unjustly discriminatory either because through some inequality they give one customer an unfair advantage over a competitor, or because they impose upon one class of customers, or the members thereof, more than their just proportion of the entire cost of the service. The utility must be given a fair aggregate return, and that aggregate return must be equitably distributed over all of its customers."

*Re Lincoln Water Co. P. U. R.*, 1919 B 752, 765. Nichols on *Public Utility Service and Discrimination* (1928 ed.) page 870.

When there is a general rate increase, and from such an increase the parties cannot here escape, there must of necessity be left for the judgment of the Commission a wide area of adjustment of rates in various classifications within the business of the utility. If the Commission with its accumulated experience and with the resources available to it cannot fairly adjust rates, to whom is this task to be en-

trusted? It is well understood that we do not make rates. Our function as a Law Court in considering exceptions to decrees of the Public Utilities Commission is to guard against violations of the Constitution and the law.

The evidence in support of the findings and conclusions of the Commission was substantial in character and sufficient to form the basis of the decree.

In the third exception the respondent urges that the so-called 1948 amendment to the contract between the utilities was invalid for lack of consideration and lack of authorization or approval by the respondent's directors. Under the amendment in substance the respondent agreed to pay for electric energy "as provided in the Company's Class V-2 rate . . . as the same is now on file or as hereafter changed or modified when such changes or modifications become effective" and for certain fuel charges. The respondent also gained a right to cancel the contract under certain conditions.

In our view it is unnecessary to pass upon the validity of the amendment. It is sufficient to repeat that rates under such contracts are subject to adjustment by the Commission. *Guilford Water Co.* and *Searsport Water Co.* cases *supra*. The respondent cannot well complain that the existing rate was presumed to be fair and reasonable. There is no suggestion that it had ever objected to it. Accordingly, the rate fairly formed a starting point for application of an increase.

The entry will be

*Exceptions overruled.*