CITY OF CALAIS
*vs.*
CALAIS WATER & POWER COMPANY
*and*
MAINE PUBLIC UTILITIES COMMISSION

Kennebec.    Opinion, September 28, 1961.

*Richard B. Sanborn,*
*Francis A. Brown,* for plaintiff.

*Francis E. Day,* for defendant.
*John G. Feehan,* for commission.

SITTING: WILLIAMSON, C. J. WEBBER, TAPLEY, SULLIVAN, DUBORD, SIDDALL, JJ.

DUBORD, J. This is a petition filed by the City of Calais (hereinafter referred to as the "City"), under the provisions of Section 69, Chapter 44 of the Revised Statutes of 1954, seeking a review of a decision of the Public Utilities Commission of Maine fixing certain rates for water service.

The Calais Water & Power Company (hereinafter referred to as the "Company"), is a public utility subject to the jurisdiction of the Public Utilities Commission (hereinafter referred to as the "Commission"), which furnishes water for domestic, commercial, industrial and municipal purposes in Calais, Maine, and Milltown, New Brunswick, including fire protection service to both communities. The principal source of water supply for the Company is in St. Stephen, New Brunswick.

On June 27, 1960 the Company filed a rate schedule with the Commission proposing an increase in water rates to its customers to begin October 1, 1960. With its proposed rate schedule, the Company asserted that an increase in its rates was made essential by the urgent need of necessary improvements to its facilities, particularly for the purpose of affording better fire protection to the communities which it serves. The Company also declared that an increase in rates was vital in order to enhance its earnings and to demonstrate its ability to repay loans needed for the installation of rapid filters and a new water tank, all to be used to better public fire protection.

Adequate notices were issued and public hearings held. At the conclusion of the Company's presentation of the evidence, the City moved to dismiss the petition for increased rates on the ground that the Company was seeking rates upon properties not used or required to be used within the State.

It was argued by the City that the Commission had not complied with the provisions of Section 18, Chapter 44, R. S. 1954, as amended, the pertinent portion of which statute reads as follows:

"In determining reasonable and just rates, tolls and charges, the commission shall fix a reasonable value upon all the property of any public utility used or required to be used in its service to the public *within the state* (emphasis supplied) and a fair return thereon."

This motion was denied.

Subsequently and prior to the decree the City requested findings of fact as to the value of the property of the Company used or required to be used in its service to the public in Maine, the fair return thereon, cost thereof when first devoted to use, prudent acquisition cost thereof and expenses and revenues of the Company in Maine. This request of findings of fact was denied.

On December 28, 1960 the Commission entered its decree. It fixed a rate base of $358,035, which included the properties of the Company in Maine and in New Brunswick. It granted the Company its requested water service revenues of $88,154, being revenues received from customers in both Maine and New Brunswick. Increased rates were set to become effective January 1, 1961, with certain revisions to become effective April 1, 1961.

The new rates for public fire protection to be paid by the City provide for an annual increase over the old rates of about $10,000, and constitute an increase of approximately 107% over prior rates. It is set forth in the decree that of the total revenue to be provided by the proposed increased rates, slightly less than 33% would be obtained from fire protection service.

The petition now before us for consideration alleges in substance that: (1) the rates are unreasonable, unjust and

unlawful in that they amount to confiscation of property and violation of constitutional rights of the City; (2) the decree is unlawful because the Commission did not comply with the provisions of Section 18, Chapter 44, R. S. 1954; (3) the Company has not sustained the burden of proof made incumbent under the provisions of Section 71, Chapter 44, R. S. 1954; (4) the Commission erred in denying the City's motion to dismiss the proceeding; and (5) the Commission erred in its failure to make findings of facts in accordance with the motion filed in behalf of the City.

In their brief, counsel for the City set forth the principal issues as follows:

"1. Was it proper for the Commission to overrule the City's Motion to Dismiss?

"2. Was it proper for the Commission to fail to grant the City's Request for Findings of Fact?

"3. Did the Commission properly fix a reasonable value upon all the property of the utility used or required to be used in its service to the public in Maine? In other words, may the Commission fix a rate base for a rate proceeding in Maine upon all of the property of a utility in both Maine and Canada?

"4. Did the Commission fix a fair return upon all the property of the utility used or required to be used in its service to the public in Maine? Again, can Maine and Canadian properties and operations be combined?

"5. Did the Commission err in finding that there was no evidence that segregation or separation of the plant and expenses between New Brunswick and Maine would substantially change the proposed rate distribution and in questioning the feasibility of requiring a separation of plant and expenses?

"6. Did the Commission err in making allocation of fire protection costs?"

While the foregoing sets forth the issues in detail, the principal issue revolves around the contention of the City that the Commission failed to formulate its decision in accordance with the provisions of Section 18, Chapter 44, R. S. 1954.

Counsel for the City argues strongly that it was error on the part of the Commission to combine the properties owned by the Company in New Brunswick and Maine; that in so doing the Commission totally disregarded the provisions of the pertinent statute.

Because of the facts connected with the unique and unusual situation, the entire plant of this Company might well be considered as one single integrated water system which is used or required to be used in its service to customers in both jurisdictions. Mains and reservoirs in Canada feed water into mains in Maine. The pumping station and filter plant in Maine services the customers in Canada. Water flows back and forth from one side of the boundary to the other in accordance with needs. The Company has never attempted to allocate and segregate the portions of its plant or its services.

That the Commission did not separate the assets in New Brunswick from the assets in Maine, nor did they separate the respective revenues and the expenses, is clearly shown by statements in the decree itself.

In denying the motion to dismiss, the Commission had this to say:

"It is the contention of the City of Calais, in its objection to this rate application, that in accordance with jurisdiction requirements, Section 18, Chapter 44 of the Revised Statutes of the State of Maine, the Company by not separating plant and expense has not carried its statutory burden of proof. Such a position is not new to the rate proceedings of the Company, as the contention was

disposed of by this Commission in prior proceedings. (P.U.R. 1922A, pages 370-373) In our opinion, the situation pertaining to relative investment, population distribution, does not seem to have substantially changed, and having no evidence which leads us to believe that segregation or separation of the plant and expenses between Milltown, N. B. and Calais, Maine would substantially change the proposed rate distribution, we shall subscribe to the Company's position that one integrated water system be considered. We question the feasibility of requiring that a separation of plant and expenses be made and, as shown in the record in this case, a motion to dismiss this case on that basis on the part of the City, was denied."

That the value of the property of a public utility employed by it in intra-state business must be considered, for purposes of rate making, separately and apart from that, if any, employed in interstate business has been determined in many jurisdictions. However, we need give no consideration to decisions in other jurisdictions because the issue has been definitely determined by this court in *New England Tel. & Tel. Company* v. *P.U.C.*, 148 Me. 374; 94 A. (2nd) 801.

In that case this court said:

"What the Company says, as we view it, is that it is not only entitled to an income based on a reasonable return on the fair value of its property devoted to the public service within Maine, but that in figuring such fair return it is entitled to deduct the expenses of operating its plant within this state. The problem of allocating these expenses between interstate use and intrastate use is a real one; for the plant and equipment of the Company are used in common for both services. The seeming confusion grows out of our form of government under which Maine as other states has control of operations within the state, and the federal government through the Federal Communications Commission has jurisdiction over operations

which go beyond the borders of the state. Justice Hughes, speaking for a unanimous court in the *Minnesota Rate Cases, supra,* laid down the principal standard for apportioning expense as that of the relative use of the facilities and equipment employed in the two services, interstate and intrastate service.

"After a careful reading of the opinion and findings of the Maine Public Utilities Commission in both cases, No. 1316 and No. 1370, we are convinced that the majority of this Commission disregarded this factor which the Supreme Court and many state courts have held to be the most important element of all in applying separations. This exception by the Company was well taken and must be sustained."

"The Commission was concerned here with what portion of the plant of the Company was properly allotted to intrastate service in Maine; also what portion of the expenses should be charged to the operation of it. We have stated before that the only proper way to decide these questions is to determine them on the basis of the relative use of the plant in the two services, intrastate and interstate. As was acknowledged by Chief Justice Hughes in *Smith* v. *Illinois Bell Telephone Co., supra,* the problem is a difficult one and exactness cannot be expected in the solution of it. It is all the more important because it is a jurisdictional question; and must be decided broadly after giving due consideration to the rulings of the federal authorities on the same point. * * * * As the rulings of the Commission on this point are prejudicial to the Company, and unsupported by the evidence, the exception is sustained."

In the absence of a special legislative provision pertaining to the rather unusual setup of the Company which actually operates as an integrated utility, even though its plant and equipment are located in different jurisdictions, it was the duty of the Company, in order to sustain the burden of proof placed upon it by the statute (Section 71,

Chapter 44, R. S. 1954) to introduce evidence at the hearing upon the issue of separation of properties, revenues, and expenses, to the end that the Commission might proceed in compliance with the dictates of Section 18.

Moreover, another point not appearing in the record, but argued by counsel seems to be pertinent.

In reaching its conclusion not to separate the properties in Calais from those across the boundary line in New Brunswick, the Commission said that the contention of the City upon the point had been disposed of in prior proceedings. Evidence of these prior proceedings was not introduced as evidence and made a part of the record. We ruled in the case of *P.U.C. v. Cole's Express*, 153 Me. 487; 138 A. (2nd) 466, that administrative bodies have no right to exercise adjudicatory or quasi judicial functions on the basis of evidence not before it.

That prior procedure on the part of the Commission to consider the Company as an integrated unit without the necessity of separation has not been questioned before, does not preclude the City from raising the issue at this time.

We, therefore, conclude that the decree of the Commission is erroneous and should be annulled.

The motion of the City that the Commission make a finding of facts upon which its decision was based is undoubtedly interwoven with the City's main contention relating to failure to comply with the provisions of Section 18, Chapter 44; and it may not be essential that we discuss this issue. However, in view of previous decisions of this court, it clearly appears that the Commission was under a duty of making a finding of facts in compliance with the City's motion therefor.

In the recent case of *Richer, Re: Contract Carrier Permit*, 156 Me. 178, 182; 163 A. (2nd) 350, this court has said:

"... it is clearly the duty of the Commission under the statute, at least, if requested by any of the interested parties, to set forth in its orders and decrees the facts on which its order is based, otherwise the remedy provided by the statute for any erroneous ruling of law may be rendered futile." *Hamilton* v. *Caribou Water Light & Power Company,* 121 Me. 422, 425, 117 A. 582.

See also *Casco Castle Co., Petr.,* 141 Me. 222, 42 A. (2nd) 43; *CMPCo. Re Contract Rate,* 152 Me. 32, 122 A. (2nd) 541.

One other issue remains for determination; and that relates to the contention of the City that there is nothing in the decree of the Commission showing how the amount allocated for the cost of fire protection rendered the City of Calais was arrived at. We ruled in *City of Bangor* v. *P.U.C.,* 156 Me. 455, 473, 167 A. (2nd) 6, that the Commission has the duty to disclose the method employed to reach the prescribed rates so that the validity of its conclusions may be tested on review.

In this respect, the present decree does not conform to the requirements set forth in the City of Bangor case.

The only reference in the decree of the Commission concerning the allocation for fire protection service is a statement to the effect that "slightly under 33% of these revenues would be obtained from fire protection service." This statement is perhaps founded upon the policy formerly applied by the Public Utilities Commission in apportioning from 28% to 32% of the gross revenues of a water company to public service. However, in the light of the decision in the Bangor case, we are of the opinion that each case must be considered on its merits and local conditions examined. When a decision is reached there should be embodied in it the manner in which it was arrived at. Tested by this formula, the present decree is not in conformity

and the contentions of the City in respect thereto must be sustained.

We recognize that the problem of allocating the revenues of a public utility between fire protection service and general customer service is a perplexing one and that a correct mathematical result is perhaps unlikely of attainment.

There is a complete discussion of this difficult problem in *City of Bangor* v. *P.U.C., supra,* beginning on Page 460 and extending through Page 465.

In the instant case, it may well be that the results reached by the Commission are correct and reasonable. However, the City of Calais has the right to expect the decree of the Commission to be based upon the applicable statutes and the rules specified in prior decisions of this court.

Consequently, the petition is sustained and the decree annulled. The cause is remanded to the Public Utilities Commission (1), for the purpose of establishing a new rate base formulated after separation of the properties in the two jurisdictions, and the revenues and expenses in connection therewith, and for the consideration of the rates of the Calais Water & Power Company under the principles herein set forth upon the present record and such further evidence as may be introduced by the interested parties; and (2), for a disclosure by the Commission in its new decree of the method employed to reach the prescribed rates for fire protection.

Copies of all orders and decrees shall be filed by the Public Utilities Commission with the Clerk of the Law Court in the County of Kennebec within 10 days after the date of the respective order.

The petition is retained upon this docket until final disposition thereof.

*So Ordered.*