2005 ME 64

**VERIZON NEW ENGLAND, INC.**

v.

**PUBLIC UTILITIES COMMISSION
et al.**

Supreme Judicial Court of Maine.

Argued: Feb. 16, 2005.
Decided: June 2, 2005.
Revised: June 21, 2005.

Donald W. Boecke (orally), Verizon New England Inc., Boston, MA, Catherine R.

Connors, William D. Hewitt, Pierce Atwood, Portland, for appellant.

Trina M. Bragdon (orally), Joanne B. Steneck, Public Utilities Commission, William C. Black, Wayne R. Jortner, Office of the Public Advocate, Augusta, Frederick R. Samp (orally), Great Works Internet, Biddeford, Joseph G. Donahue, Benjamin M. Sanborn, Preti Flaherty Beliveau Pachios & Haley, L.L.P., Augusta, for Mid–Maine Communications, Oxford Networks, Pine Tree Networks, and USA Telephone.

Panel: SAUFLEY, C.J., and CLIFFORD, RUDMAN, DANA, CALKINS, and LEVY, JJ.

DANA, J.

[¶ 1] Verizon New England, Inc. appeals from a decision of the Public Utilities Commission ordering it to provide a Maine competitor access to a portion of Verizon's telecommunications network. Verizon contends that the order is preempted by federal telecommunications law and, in any event, beyond the authority of the PUC. Because we disagree, we affirm.

## I. BACKGROUND

[¶ 2] The federal Telecommunications of Act of 1996 (TelAct), Pub.L. No. 104–104, 110 Stat. 56 (1996) (codified as amended at 47 U.S.C.A. §§ 251–710 (West 2001 & Supp. 2004)), was enacted to "promote competition and reduce regulation in order to secure lower prices and higher quality services for ... consumers and encourage the rapid deployment of new telecommunications technologies." *Id.* Preamble. To carry out this purpose, the TelAct requires incumbent local exchange carriers (ILECs), such as Verizon, to "unbundle" portions of their telecommunication networks by making them available to competing local exchange carriers (CLECs). 47 U.S.C.A. § 251(c)(3), (d) (West 2001).

The Federal Communications Commission determines which network elements are subject to unbundling pursuant to the TelAct. *Id.* § 251(d)(2).

[¶ 3] In late 2001, Skowhegan Online, Inc. (SOI), a CLEC, requested the unbundling of a portion of Verizon's copper wire network for purposes of providing high-speed broadband internet services to SOI customers in the Skowhegan area. Specifically, SOI sought access to the copper wire network running between Verizon's central office and either pole-mounted network interface devices or SOI-owned remote terminals.

[¶ 4] Verizon rejected SOI's request and SOI filed a complaint with the PUC. In June 2002, the PUC's Rapid Response Process Team found that SOI was not requesting access to an entire loop terminating at the end-user's premises, but rather to only a portion of the loop, and concluded that Verizon was not required by the TelAct to comply with SOI's request because the portion of the network to which SOI sought access had not been classified by the FCC as an element subject to unbundling pursuant to the TelAct. Nevertheless, because unbundling in this case would further the public policy of providing internet access to rural Maine citizens, the Team recommended a further PUC investigation.

[¶ 5] The PUC commenced an investigation in November 2002. While the investigation was underway, the FCC issued its Triennial Review Order (TRO), which reviewed the unbundling obligations of ILECs and the implementation of local competition provisions of the TelAct. *In the Matter of Review of the Section 251 Unbundling Obligations of Incumbent Local Exch. Carriers,* 18 F.C.C.R. 16978 (2003) (*TRO*). The TRO defines a "loop" as a transmission facility between a company's central office and an end-user cus-

tomer's premises. *TRO*, 18 F.C.C.R. at 17105. The TRO determined which network elements were subject to unbundling pursuant to the TelAct. *See generally TRO*, 18 F.C.C.R. at 16978. This analysis was based on the FCC's construction of the provision in the TelAct requiring ILECs to allow access to their local exchange networks if "the failure to provide access to such network elements would impair the ability of the telecommunications carrier seeking access to provide the services that it seeks to offer." 47 U.S.C.A. § 251(d)(2)(B). In general, the TRO does not require the unbundling of loops that are made up entirely of fiber optic cable, or so-called "next generation" technologies, because to do so would discourage ILECs from making these investments and because these technologies are so new that CLECs are not at a strong competitive disadvantage. *See TRO*, 18 F.C.C.R. at 17141–48; 47 C.F.R. § 51.319(a)(3) (2004). The TRO does, however, require the unbundling of traditional stand-alone copper loops, which are made up entirely of copper wire and include no next generation technologies. *See TRO*, 18 F.C.C.R. at 17128–30. The FCC reasoned that permitting increased access to these existing loops would foster competition and advance the purposes of the Act. *Id.* at 17128–29.

[¶ 6] Some loops are hybrids composed of both fiber optic cable and copper wire. *See TRO*, 18 F.C.C.R. at 17121, 17148. Typically, fiber optic cable is utilized at the beginning of the loop—the "feeder" portion of the loop, running from the company's central office to a centrally located feeder distribution point—and copper wire is used for the rest of the loop—the "distribution" portion of the loop, running be-

tween the feeder distribution point and the end-user's premises. *See* 47 C.F.R. § 51.319(a)(2) (2004). The TRO does not require the unbundling of the fiber optic feeder portion of a hybrid fiber/copper loop, but will permit unbundling of the copper wire distribution portion of the loop running to the end-user. *See TRO*, 18 F.C.C.R. at 17131–32. This copper portion is referred to as a subloop. *Id.*

[¶ 7] The FCC anticipated some need for local determinations regarding whether, pursuant to 47 U.S.C.A. § 251(d)(2)(B), the failure to unbundle specific network elements would sufficiently impair the ability of competitors to provide services. *TRO*, 18 F.C.C.R. at 17064–66. Accordingly, the FCC expressly delegated authority to local utilities commissions to conduct geographically sensitive analyses of impairment pursuant to the TelAct. *Id.* at 17065–66.

[¶ 8] In December 2003,[1] taking into account the FCC's pronouncements in the TRO, a PUC hearing examiner ordered Verizon to unbundle its network as requested by SOI. The examiner agreed with Verizon that the network element requested by SOI did not constitute a "loop" according to the FCC rules, because a loop must terminate at an end-user's premises and not, as SOI requested, at a pole-mounted or remote terminal. The examiner concluded, nonetheless, that Verizon could be ordered to unbundle a portion of the copper wire loop, even though SOI did not seek access to a loop terminating at the end-user's premises, because the TelAct permits the unbundling of copper wire loops. The examiner stated that "the FCC intended CLECs to have full access to [stand-alone] copper loops and that an in-

---

1. By this time, the PUC had granted intervenor status to other CLECs. Biddeford Internet Corp., d/b/a Great Works Internet, and Mid–Maine Communications have both filed briefs in the present appeal. The PUC also permitted the Office of the Public Advocate to intervene and it filed a brief. Several other CLECs have filed an amicus brief, as well.

dividual CLEC may decide not to use the entire loop but instead choose to terminate the loop at a point before the customer demarcation point."

[¶ 9] Three months later, the United States Court of Appeals for the District of Columbia Circuit issued an opinion rejecting the FCC's delegation of impairment determinations to local state utilities commissions. *United States Telecom Ass'n v. Fed. Communications Comm'n*, 359 F.3d 554, 565–68 (D.C.Cir.2004) (*USTA II*). The court held that, although delegation to a subordinate agency would be appropriate, delegation to outside parties was improper when Congress had not affirmatively authorized it. *Id.* at 565–66.

[¶ 10] The PUC thereafter reviewed SOI's request for access and, in April 2004, affirmed the hearing examiner's order requiring Verizon to provide access to its network as requested by SOI. The PUC agreed with Verizon that, because SOI was not seeking access to an entire copper loop terminating at the end-user's premises, Verizon was not required by federal law to unbundle this particular network element. The PUC concluded, nonetheless, that it had independent authority pursuant to state law to order unbundling, citing 35–A M.R.S.A. §§ 1306 and 7101 (1988 & Pamph. 2004), and that federal law did not preempt its decision because it was consistent with the TelAct and the FCC has not construed the statute in a way that prohibits the unbundling.

[¶ 11] Verizon appealed from this PUC order pursuant to 35–A M.R.S.A. § 1320 (1988).

## II. DISCUSSION

[¶ 12] The present case poses three important questions: (A) Does the PUC have the authority pursuant to the federal TelAct to unbundle this particular network element; (B) Does the PUC have the authority pursuant to Maine law to require Verizon to unbundle this particular network element; and (C) Does the TelAct preempt the PUC's order?

### A. The PUC's Authority Pursuant to the TelAct

[¶ 13] Verizon contends that the FCC has not determined that network elements that terminate short of an end-user's premises constitute unbundled network elements. According to Verizon, the FCC has the exclusive authority to determine which elements must be unbundled pursuant to the TelAct and may not delegate that duty to a state commission such as the PUC.

[¶ 14] The TelAct requires ILECs to provide requesting carriers "access to network elements on an unbundled basis at any technically feasible point on rates, terms, and conditions that are just, reasonable, and nondiscriminatory." 47 U.S.C.A. § 251(c)(3). The Act provides standards for determining which network elements must be unbundled pursuant to subsection (c)(3):

In determining what network elements should be made available for purposes of subsection (c)(3) of this section, the [FCC] shall consider, at a minimum, whether—

(A) access to such network elements as are proprietary in nature is necessary; and

(B) the failure to provide access to such network elements would impair the ability of the telecommunications carrier seeking access to provide the services that it seeks to offer.

47 U.S.C.A. § 251(d)(2).

[¶ 15] The United States Court of Appeals for the District of Columbia Circuit has concluded that the FCC has the exclusive authority pursuant to these statutory

provisions to determine which network elements shall be unbundled and made available to CLECs pursuant to the TelAct. *USTA II*, 359 F.3d at 565–68; 47 U.S.C.A. § 251(d)(2)(B). Because the D.C. Circuit Court of Appeals has exclusive jurisdiction over FCC appeals, 47 U.S.C.A. § 402(b) (West 2001), its pronouncements are binding on the FCC. The FCC may not, therefore, delegate to state commissions the authority to decide which elements must be unbundled pursuant to the TelAct.

[¶ 16] As a result of the *USTA II* decision, the PUC lacks the authority to announce whether the network element requested by SOI must be unbundled pursuant to the TelAct. We must, therefore, consider whether the PUC may order the unbundling pursuant to state law.

### B. The PUC's Authority Pursuant to State Law

[¶ 17] Maine's public utilities statutes set forth the general telecommunications policy to be followed by the PUC:

**2. Economic Development.** The Legislature . . . declares and finds that a modern state-of-the-art telecommunications network is essential for the economic health and vitality of the State and for improvement in the quality of life for all Maine citizens. Therefore, it is the goal of the State that all Maine's businesses and citizens should have affordable access to an integrated telecommunication infrastructure capable of providing voice, data and image-based services. The State shall consider policies that:

A. Encourage economic development;

B. Employ methods of regulation that *encourage the development and deployment of new technologies;* and

C. Encourage acceptable service applications that support economic development initiatives or otherwise improve the well-being of Maine citizens.

. . . . .

**4. Information Access.** The Legislature further declares and finds that computer-based information services and information networks are important economic and educational resources that should be available to all Maine citizens at affordable rates. It is the policy of the State that affordable access to those information services that require a computer and rely on the use of the telecommunications network should be made available in all communities of the State without regard to geographic location.

35–A M.R.S.A. § 7101 (Pamph. 2004). The PUC also has implied powers to carry out the purposes of Maine's telecommunication laws: "The provisions of this Title shall be interpreted and construed liberally to accomplish the purpose of this Title. The commission has all implied and inherent powers under this Title, which are necessary and proper to execute faithfully its express powers and functions specified in this Title." 35–A M.R.S.A. § 104 (1988). *See New England Tel. & Tel. Co. v. Pub. Utils. Comm'n*, 1997 ME 222, ¶ 11, 705 A.2d 706, 709–10.

[¶ 18] The Legislature has also endorsed the joint use of telecommunications equipment:

### § 711. Joint use of equipment

**1. Joint Use Permitted.** The commission may order that joint use be permitted and prescribe reasonable compensation and reasonable terms and conditions for the joint use when, after a hearing had upon its own motion or upon complaint of a public utility or cable television system affected, it finds the following:

A. That public convenience and necessity require the use by one public utility or cable television system of the conduits, subways, wires, poles, pipes or other equipment, or any part of them, on, over or under any street or highway and belonging to another public utility or cable television system;

B. That joint use will not result in irreparable injury to the owner or other users of the conduits, subways, wires, poles, pipes or other equipment or in any substantial detriment to the service; and

C. That the public utilities or cable television system have failed to agree upon the use or the terms and conditions or compensation for the use.

. . . .

35–A M.R.S.A. § 711 (1988).[2]  In addition, the Legislature has enacted a provision that permits the PUC to exercise its authority to prevent practices that are unjust or unreasonable:

If after a public hearing the commission finds that a term, condition, practice, act or service complained of is unjust, unreasonable, insufficient, unjustly discriminatory or otherwise in violation of this Title or if it finds that a service is inadequate or that reasonable service cannot be obtained, the commission may by order establish or change terms, conditions, measurement, practice, service or acts, as it finds to be just and reasonable.  In determining the justness and reasonableness of the order, the commission shall assure rate design stability.

35–A M.R.S.A. § 1306(2) (1988).

[¶ 19]  The Legislature has granted broad authority to the PUC to make orders that are necessary to carry out the purpose of making modern telecommunications services more available and affordable to Maine residents upon terms that are just and reasonable.  The PUC's order that Verizon must unbundle the requested portion of its copper loop was a valid exercise of this authority unless federal law preempts such state action.

## C. Does Federal Law Preempt the PUC Order?

[¶ 20]  This dispute forces us to address whether the TelAct, as interpreted by the United States Court of Appeals for the District of Columbia Circuit, preempts all state statutory and regulatory authority to determine that certain network elements must be unbundled.  We conclude that it does not.

[¶ 21]  We have acknowledged the United States Supreme Court's test for determining whether federal law preempts state law:

Preemption occurs when Congress, in enacting a federal statute, expresses a clear intent to preempt state law, when there is an outright or actual conflict between federal and state law, where compliance with both federal and state law is in effect physically impossible, where there is implicit in federal law a barrier to state regulation, where Congress has legislated comprehensively, thus occupying an entire field of regulation and leaving no room for the States to supplement federal law, or where the state law stands as an obstacle to the accomplishment and execution of the full objectives of Congress.

---

2.  Utility companies also have the statutory authority to lease their "lines and property, in whole or in part," upon terms agreed to by the parties and subject to the PUC's control.  35–A M.R.S.A. § 7903(2), (3) (Pamph. 2004).

*Cent. Me. Power Co. v. Town of Lebanon,* 571 A.2d 1189, 1191 (Me.1990) (quoting *La. Pub. Serv. Comm. v. F.C.C.,* 476 U.S. 355, 368–69, 106 S.Ct. 1890, 90 L.Ed.2d 369 (1986)). "Preemption occurs whenever state law conflicts with federal law in such a way that it becomes impossible to comply with both simultaneously." (Citing *California v. F.E.R.C.,* 495 U.S. 490, 110 S.Ct. 2024, 109 L.Ed.2d 474 (1990)); *see also Schneidewind v. ANR Pipeline Co.,* 485 U.S. 293, 108 S.Ct. 1145, 99 L.Ed.2d 316 (1988).

[¶ 22] Although the TelAct was intended to create a uniform standard for the telecommunication industry, it expressly preserved some authority in the states to regulate in this area. Section 251(d) provides:

> **(3) Preservation of State access regulations**
>
> In prescribing and enforcing regulations to implement the requirements of this section, the [FCC] shall not preclude the enforcement of any regulation, order, or policy of a State commission that -
>
> **(A)** establishes access and interconnection obligations of local exchange carriers;
>
> **(B)** is consistent with the requirements of this section; and
>
> **(C)** does not substantially prevent implementation of the requirements of this section and the purposes of this part.

47 U.S.C.A. § 251(d)(3). Similarly, section 261 permits state commissions to enforce and adopt regulations that are consistent with the TelAct:

> **(b) Existing State regulations**
>
> Nothing in this part [entitled "Development of Competitive Markets"] shall be construed to prohibit any State commission from enforcing regulations prescribed prior to February 8, 1996, or from prescribing regulations after February 8, 1996, in fulfilling the requirements of this part, if such regulations are not inconsistent with the provisions of this part.
>
> **(c) Additional State requirements**
>
> Nothing in this part precludes a State from imposing requirements on a telecommunications carrier for intrastate services that are necessary to further competition in the provision of telephone exchange service or exchange access, as long as the State's requirements are not inconsistent with this part or the Commission's regulations to implement this part.

47 U.S.C.A. § 261 (West 2001 & Supp. 2004).

[¶ 23] The TelAct, therefore, allows for state regulation that is consistent with the TelAct, and for the enforcement of state commissions' orders, regulations, and policies that do not "substantially prevent" the implementation of the TelAct. *Id.* §§ 251, 261. The TelAct also, through the above language, preempts state statutes, orders, and regulations that conflict with its mandates. *Id.* §§ 251(d)(3)(B), (C), 261(b), (c); *see Me. Yankee Atomic Power Co. v. Me. Pub. Utils. Comm'n,* 581 A.2d 799, 802–03 (1990) *cert. denied,* 501 U.S. 1230, 111 S.Ct. 2851, 115 L.Ed.2d 1019 (1991) (stating that federal law preempts state law "where there is implicit in federal law a barrier to state regulation ... or where the state law stands as an obstacle to the accomplishment and execution of the full objectives of Congress") (quotation marks omitted).

[¶ 24] In the present case, the PUC's order does not conflict with federal law. *Compare with In the Matter of BellSouth Telecomms., Inc.,* 20 F.C.C.R. 6830, —— (2005) (rejecting state commissions' unbundling of "an element that the [FCC] expressly declined to unbundle"). The FCC

has stated, and the United States Court of Appeals for the District of Columbia Circuit has affirmed, that copper loops and subloops are network elements subject to unbundling in their entirety. In the present case, the PUC ordered Verizon to unbundle a portion of a copper loop that stops short of the end-user's premises. The FCC has not addressed this discrete issue, but to the extent that it has separated out network elements that are subject to unbundling, it has generally approved the unbundling of traditional copper network elements.

[¶ 25] To prohibit the PUC from ordering the unbundling of the network element SOI pursued in the present case, we would be required to hold that the TelAct preempts any state decisions determining which elements may be unbundled pursuant to state law, whether or not those determinations conflict with the TelAct. Such broad preemption would read out of the TelAct its express preservation of the rights of states to regulate access. *See* 47 U.S.C.A. §§ 251(d)(3), 261(b), (c).

[¶ 26] The FCC has also made clear since *USTA II* that it cannot feasibly comply with the non-delegation mandate of *USTA II* by taking responsibility for ongoing case-by-case unbundling determinations regarding newer technologies. *In the Matter of Unbundled Access to Network Elements,* No. FCC 04–290, slip op. at ¶¶ 157, 161, 2005 WL 289015 (Feb. 4, 2005). Rather, the FCC has stated that it will make future unbundling determinations regarding next generation technologies by unbundling larger, not smaller, network elements. *See id.* The FCC determined that "the wire center service area is the appropriate geographic unit at which to evaluate requesting carriers' impairment without access to unbundled high-capacity loops." *Id.* ¶ 161. The FCC will leave smaller, "building-specific imped-

iments to be addressed in other Commission proceedings, or in other fora, as appropriate." *Id.* ¶ 163.

[¶ 27] The FCC has therefore recognized that other administrative proceedings and administrative bodies will be involved in making small-scale determinations consistent with the FCC's broader mandates regarding unbundling. This recognition of the states' roles clarifies that state action consistent with the FCC's unbundling determinations is not preempted, and may be necessary to complement the FCC's implementation of the TelAct.

[¶ 28] Because the FCC regulations do not prohibit the unbundling of copper wire loops, we conclude that the PUC order to unbundle the portion of the copper wire loop requested by SOI does not conflict with FCC regulations, and is not preempted by federal law.

The entry is:

Order of the Public Utilities Commission affirmed.