MAINE SUPREME JUDICIAL COURT                        Reporter of Decisions
Decision:    2017 ME 178
Docket:      PUC-16-398
Argued:      April 11, 2017
Decided:     August 15, 2017

Panel:       SAUFLEY, C.J., and MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.

ENHANCED COMMUNICATIONS OF NORTHERN NEW ENGLAND, INC.

v.

PUBLIC UTILITIES COMMISSION et al.

HUMPHREY, J.

[¶1]  Enhanced Communications of Northern New England, Inc., appeals from an order of the Public Utilities Commission granting in part and denying in part a petition for a certificate of public convenience and necessity to operate as a competitive local exchange carrier.  *See* 35-A M.R.S. §§ 2102, 2105 (2016).  Enhanced contends that the Commission's partial denial is unlawful and unsupported by substantial evidence.  We affirm the order.

## I.  BACKGROUND

[¶2]  Enhanced is a Delaware corporation that sells communications services, including long distance telephone and data services, and is a wholly-owned direct subsidiary of FairPoint Communications, Inc.  FairPoint is an incumbent local exchange carrier (ILEC).  On June 23, 2015, Enhanced

filed a petition with the Commission pursuant to 35-A M.R.S. § 2102 to obtain a certificate of public convenience and necessity to furnish telecommunications service as a competitive local exchange carrier (CLEC).[1] Because an application by a CLEC to operate in the same regional service territory as an affiliated ILEC presented a novel issue, on August 13, 2015, the Commission held an informal technical conference to gather information about intended service plans and the relationship between Enhanced and FairPoint.[2] Several parties and stakeholders attended the informal technical conference, including representatives from FairPoint, the Office of the Public Advocate (OPA), Time Warner Cable (TWC), and the CLEC Association of Northern New England (CANNE). OPA, TWC, and CANNE all submitted comments to the Commission regarding Enhanced's petition.

---

[1] A local exchange carrier (LEC) is "any person that is engaged in the provision of telephone exchange service or exchange access." 35-A M.R.S. § 102(9-E) (2016). ILECs are entities (or successors to those entities) that held regional monopolies over local telephone service prior to deregulation, when the federal Telecommunications Act of 1996, Pub. L. No. 104-104, 110 Stat. 56 (codified as amended in scattered sections of 47 U.S.C.S.), required ILECs to unbundle parts of their telecommunications networks to allow CLECs to enter the market. *See* 35-A M.R.S. § 102(9-B) (2016); *Verizon New Eng., Inc. v. Pub. Utils. Comm'n*, 2005 ME 64, ¶ 2, 875 A.2d 118. CLECs utilize ILEC infrastructure.

A number of FairPoint subsidiaries operate in Maine as affiliated ILECs, including China Telephone Company, Standish Telephone Company, Community Service Telephone Co., Maine Telephone Company, Sidney Telephone Company, Northland Telephone Company of Maine, Inc., and Northern New England Telephone Operations, LLC.

[2] FairPoint and its affiliated ILECs are, unless otherwise noted, referred to collectively in this opinion as FairPoint.

[¶3]  On March 21, 2016, the Commission staff recommended that the Commission grant Enhanced's petition to the extent that Enhanced would be allowed to operate as a CLEC in all Maine exchanges except for those in which FairPoint, or an affiliate or subsidiary, already provided service as an ILEC.  On June 20, 2016, the Commission issued an order largely adopting the recommended decision, granting Enhanced's petition in part, but denying it to the extent that Enhanced sought to provide service as a CLEC in service areas where FairPoint, or an affiliate or subsidiary, already provided service as an ILEC.

[¶4]  The Commission found that Enhanced (1) satisfied the definition of a local exchange carrier because it will provide local exchange service in Maine, (2) possessed the financial and technical capabilities to provide local exchange service in the state, and (3) satisfied the definition of a CLEC because it is not an ILEC.  The Commission noted, however, that whether the public convenience and necessity required that Enhanced provide service as a CLEC throughout Maine "present[ed] a complicated question" because an entity wholly-owned by an ILEC seeking to provide service in the same service territory as that ILEC was a matter of first impression.

4

[¶5]  The Commission observed that if Enhanced provided service in the same service territories as FairPoint, it was not clear that a benefit would be realized in the form of increased competition.  The Commission articulated several concerns raised by the parties, including that, because of its corporate relationship with FairPoint, Enhanced could gain favorable access and use of common facilities and resources, customer data, pricing, prioritization of service calls, and other competitive advantages over other CLECs.  The Commission found, according to Enhanced's representations at the conference, that Enhanced's petition to obtain CLEC authorization was not motivated by a desire to provide new or additional service to customers— "Enhanced identified only a single activity that its current lack of CLEC authorization prohibits: the ability to requisition local telephone numbering resources," in particular "thousand-number blocks of consecutive telephone numbers."[3]  The Commission acknowledged that "[a]ccess to numbering resources by LECs is subject to [Federal Communication Commission] rules and the guidelines established by [the North American Numbering Plan Administrator], which are designed to preserve limited numbering resources,"

---

[3]  The Commission noted that ILECs such as FairPoint are sometimes unable to acquire large sequential number blocks because they already have a supply of unused, nonconsecutive numbers and Federal Communication Commission (FCC) rules limit access to additional numbers until those numbers are sufficiently exhausted.  Large blocks of consecutive numbers are valuable because they are sought by business customers.

but concluded, citing a longstanding Commission policy to use number resources efficiently to preserve the single 207 area code in Maine, that it was not in the public convenience and necessity to grant Enhanced's petition to operate throughout the entire state. The Commission therefore partially denied the petition insofar as Enhanced sought to operate in the same territory as FairPoint, and emphasized that the partial denial alleviated the competition concerns raised by parties in the informal technical conference. The Commission concluded by stating:

> The Commission's partial dismissal of Enhanced's petition is without prejudice to file, in a separate Docket, another petition specifically requesting authority to operate within the service territories of the FairPoint ILECs. Any such petition should address the anti-competitive and numbering concerns raised by the Commission and the parties to this proceeding.

[¶6] Enhanced filed a petition to reconsider the decision on July 11, 2016. The Commission did not act upon the petition and thus it was denied by operation of law on August 1, 2016. *See* 9 C.M.R. 65 407 110-12 § 11(D) (2013). Enhanced timely appealed. *See* 35-A M.R.S. § 1320 (2016); M.R. App. P. 2.

## II. DISCUSSION

### A. Standard of Review

[¶7] Our review of a Commission decision is deferential and limited "to determining whether the agency's conclusions are unreasonable, unjust, or unlawful in light of the record." *Pine Tree Tel. & Tel. Co. v. Pub. Utils. Comm'n*, 634 A.2d 1302, 1304 (Me. 1993). "This court generally refuses to second-guess agencies on matters within their expertise." *Id.* "In reviewing an agency's interpretation of its own rules, regulations, or procedures, we give considerable deference to the agency . . . ." *Forest Ecology Network v. Land Use Regulation Comm'n*, 2012 ME 36, ¶ 28, 39 A.3d 74 (quotation marks omitted). When reviewing an agency's interpretation of its own regulation, we begin by "determin[ing] de novo whether the [regulation] is reasonably susceptible of different interpretations and therefore ambiguous." *See Cent. Me. Power Co. v. Pub. Utils. Comm'n*, 2014 ME 56, ¶¶ 18-19, 90 A.3d 451 (quotation marks omitted). "[I]f the language is unambiguous, we interpret the [regulation] according to its plain language." *Arsenault v. Sec'y of State*, 2006 ME 111, ¶ 11, 905 A.2d 285.

B.    Certificate of Public Convenience and Necessity

[¶8]  A CLEC may not provide service in a municipality where another utility is furnishing or authorized to furnish service unless it obtains Commission approval pursuant to 35-A M.R.S. §§ 2102 and 2105.  Section 2105 requires that to approve an additional utility where a utility already provides service, the Commission must make "a declaration, after public hearing of all parties interested, that public convenience and necessity require a 2nd public utility."  35-A M.R.S. § 2105(1).  Section 4(A) of Chapter 280 of the Commission's regulations similarly provides for approval "by making a declaration that the public convenience and necessity require an additional public utility."  9 C.M.R. 65 407 280-4 § 4(A) (2003).  The regulation sets forth three specific findings that are required before a declaration can be made.  *See id.*

> Approval to provide any service shall not be issued unless the applicant has presented sufficient evidence for the Commission to make the following findings:
>
> (1)  The applicant has adequate financial ability and willingness to cover any customer advances and deposits; and to pay intrastate access charges and interconnection charges on all intrastate telecommunications services;
>
> (2)  The applicant (other than a[n] interexchange carrier that is a reseller or [a] local exchange carrier that provides service solely through resale of local service purchased from a wholesale

schedule of another LEC) has the technical ability to measure and record intrastate traffic information and billing amounts that may be necessary for the calculation of access and interconnection charges; and

(3) The applicant is willing and able to comply with State law and Public Utilities Commission rules, including, but not limited to, this Chapter.

*Id.*

[¶9] There is no dispute that Enhanced met all three criteria set forth in section 4(A)(1)-(3)—the Commission found that Enhanced had the financial and technical capability to provide service and did not find that Enhanced was unwilling or unable to comply with the law. The central issue presented in this appeal is whether the Commission could, after making those findings, nonetheless deny Enhanced's petition for a certificate of public convenience and necessity (CPCN) to provide service in the same service territory as FairPoint on public interest grounds because of concerns about number resources and anti-competitive behavior.

[¶10] The Commission reads section 4(A) to require not only that a utility meet the three criteria specified in that provision, but also that the Commission determine that the petition is in the public necessity and convenience, which the Commission interprets as the public interest. Enhanced argues that an additional public interest requirement does not

appear in the statutes or regulations, and that it is beyond the Commission's power to impose here absent rulemaking.

[¶11]  Although section 4(A) does not list a "public interest" or "public benefit" factor among the three listed criteria, the unambiguous language of the regulation provides that, before granting a CPCN, the Commission must make a "declaration that the public convenience and necessity require an additional public utility."   9 C.M.R. 65 407 280-4 § 4(A).   Contrary to Enhanced's contention, the regulation does not compel the Commission to grant the petition if only the three criteria set forth in 9 C.M.R. 65 407 280-4 § 4(A) are met.   Instead, the three criteria set forth in section 4(A) are threshold or predicate considerations that are necessary, but not, standing alone, sufficient to grant a petition.  The Commission must further declare that an additional utility is in the public interest.[4]  The regulation does not, for example, state that if the Commission makes the three enumerated findings that it *must* grant the petition.  Rather, section 4(A) permits the Commission, after considering the evidence, to ultimately conclude that an additional utility is not in the public interest, and to deny a petition on that basis.

---

[4]  We construe "public convenience and necessity" as synonymous with "public benefit" or "public interest."  *See Zachs v. Dep't of Pub. Utils.*, 547 N.E.2d 28, 32 (Mass. 1989) ("[T]he phrase 'public convenience and necessity' is a term of art that stands for the general notion of 'public interest.'  Other courts have agreed that the phrase is simply a conclusory symbol for public benefit, good, or interest." (citations omitted) (quotation marks omitted)); *see also In re Chapman*, 151 Me. 68, 71, 116 A.2d 130, 132 (1955).

[¶12]  Construing the plain language of 9 C.M.R. 65 407 280-4 § 4(A), we conclude that an applicant must demonstrate that the public convenience and necessity require an additional utility and thus that the Commission did not err in considering the public interest.

C.  Whether the Commission Lawfully Denied Enhanced's Petition on Public Interest Grounds.

[¶13]  Enhanced further argues that even assuming 9 C.M.R. 65 407 280-4 § 4(A) contains a public interest criterion, the Commission's decision is unlawful and unsupported by substantial evidence.  Specifically, Enhanced contends that (1) nothing prohibits Enhanced from seeking a CPCN in part to acquire numbers and, in any event, number conservation is exclusively the realm of federal regulatory control; (2) the Commission's concerns about Enhanced engaging in anti-competitive behavior were speculative and unsupported by substantial evidence; and (3) the decision does not articulate a clear standard as to what Enhanced must establish to alleviate the Commission's concerns about number resources and competition.

[¶14]  Before addressing the merits of Enhanced's arguments, we reiterate several relevant findings for context.  According to the Commission, Enhanced's petition for a CPCN to operate as a CLEC in the same service territories as affiliated FairPoint ILECs presented an issue of first impression.

For that reason, the Commission held an informal technical conference to gather further information and to solicit comments from interested parties. The Commission found, based on Enhanced's representations at the conference, that (1) Enhanced sought authorization as a CLEC in order to acquire local telephone number resources; (2) Enhanced did not intend to offer any service that is not already offered to customers in those service territories; and (3) there was no service that, without authorization for Enhanced to provide service as a CLEC, Enhanced or FairPoint would be unable to offer. The Commission concluded that the public necessity and convenience would not be furthered by granting Enhanced's petition to provide service as a CLEC solely for the purpose of acquiring blocks of sequential numbers.

[¶15] It is undisputed that Enhanced had the burden of proof to establish that it met all applicable criteria to obtain approval for a CPCN, and further, as the party seeking to vacate the agency's decision, that it has the burden of persuasion on appeal. *See Kelley v. Me. Pub. Emps. Ret. Sys.*, 2009 ME 27, ¶ 16, 967 A.2d 676. "When an agency concludes that the party with the burden of proof failed to meet that burden, we will reverse that determination only if the record compels a contrary conclusion to the exclusion of any other

inference." *Id.* For the reasons set forth above, Enhanced's burden included establishing that the public interest required an additional utility. *See* 9 C.M.R. 65 407 280-4 § 4(A). Enhanced does not challenge the Commission's factual findings regarding Enhanced's service plans and motivation to obtain numbers. Notably, and more importantly, Enhanced fails to articulate or point to any evidence showing why the Commission was compelled to find that granting the petition was in the public interest. Instead, Enhanced asserts that because the three criteria set forth in 9 C.M.R. 65 407 280-4 § 4(A)(1)-(3) were satisfied, it was entitled to a CPCN, and the reasons that the Commission cited in denying the petition—number resource conservation and anti-competitive concerns—cannot sustain the decision. We disagree.

[¶16] Enhanced is correct that number resource conservation is a subject committed to federal regulatory control.[5] The Commission's stated concerns about the depletion of numbers within the 207 area code did not, however, amount to an unlawful encroachment upon federal regulatory power. Rather, the Commission's stated concern addressed the undisputed

---

[5] The FCC has "exclusive jurisdiction over those portions of the North American Numbering Plan that pertain to the United States." 47 U.S.C.S. § 251(e)(1) (LEXIS through Pub. L. No. 115-45). The North American Numbering Plan (NANP) is administered by the North American Numbering Plan Administrator (NANPA). *See* 47 C.F.R. § 52.13(a) (2017). The FCC has implemented number conservation policies designed to "prolong the life of the [NANP]." *See Sprint Corp. v. FCC*, 331 F.3d 952, 955 (D.C. Cir. 2003) (quotation marks omitted). The FCC's regulatory authority to manage number resources is exclusive, except where the FCC has delegated authority to state and local governments. *See id.* at 960.

motivation for Enhanced's petition and constituted a valid exercise of the Commission's power to determine whether granting the petition was in the public interest. *See* 35-A M.R.S. § 2105(1); 9 C.M.R. 65 407 280-4 § 4(A). Similarly, the Commission did not affirmatively find that Enhanced would engage in anti-competitive behavior, but concluded, in light of the undisputed relationship between Enhanced and FairPoint and the comments submitted as part of the technical conference proceeding, that the petition warranted additional investigation before the Commission could declare that granting the CPCN was in the public interest.

[¶17]   Contrary to Enhanced's contentions, the Commission did not contravene federal law.   The federal Telecommunications Act (the TelAct) governs state regulatory power in the area of telecommunications service:

> (a)  In general. No State or local statute or regulation, or other State or local legal requirement, may prohibit or have the effect of prohibiting the ability of any entity to provide any interstate or intrastate telecommunications service.
>
> (b)  State regulatory authority. Nothing in this section shall affect the ability of a State to impose, on a competitively neutral basis and consistent with section 254 [47 USCS § 254], requirements necessary to preserve and advance universal service, protect the public safety and welfare, ensure the continued quality of telecommunications services, and safeguard the rights of consumers.

47 U.S.C.S. § 253(a)-(b) (LEXIS through Pub. L. No. 115-45).

14

[¶18]   Although state commissions have limited power to prohibit entities from entering the market to provide telecommunications service, the power to impose requirements necessary to protect the public interest is explicitly conferred upon state commissions by section 253(b).  *See* 47 U.S.C.S. § 253(b) (LEXIS) ("Nothing in this section shall affect the ability of a State to impose, on a competitively neutral basis . . . requirements necessary to . . . protect the public safety and welfare . . . ."); *see also Verizon New Eng., Inc. v. Pub. Utils. Comm'n*, 2005 ME 64, ¶ 22, 875 A.2d 118.  We are also unpersuaded that the Commission's decision is not "competitively neutral" because it treats Enhanced differently due to its affiliation with FairPoint.  47 U.S.C.S. § 253(b) (LEXIS).  That affiliation is certainly relevant to whether granting Enhanced a CPCN is in the public convenience and necessity, particularly given Enhanced's service plans and apparent motivation to obtain numbers.  Any disparate treatment was not unlawful because, as the Commission found, there is no comparable entity with the same affiliate relationship seeking the authorization that Enhanced sought for the purpose of obtaining numbers, and it was not clear that a benefit would be realized in the form of increased competition.   Although federal law promotes active competition in telecommunications markets, the entry of an additional CLEC into the same

market as its affiliated ILEC is not *necessarily* in the public interest. *See Appeal of Bretton Woods Tel. Co.*, 56 A.3d 1266, 1275 (N.H. 2012) ("[Section 253(a) of the TelAct] does not evince Congress's determination that competition in a single service territory *always* is in the public good. The [Commission] must still make this determination."). The Commission did not contravene federal law by imposing a requirement upon Enhanced due to its unique status.

[¶19] In light of the Commission's findings that Enhanced will not provide any new or additional service, and the purpose of the application was to acquire sequential number blocks, the record does not compel a conclusion that granting the petition is in the public interest. Enhanced points to no evidence in the record that compels a conclusion contrary to that reached by the Commission and thus has failed in its burden. We defer to the Commission's expertise in this matter and to its findings supporting the conclusion that granting the petition would not further the public convenience and necessity. *See Office of the Pub. Advocate v. Pub. Utils. Comm'n*, 2015 ME 113, ¶ 15, 122 A.3d 959 (stating that Commission decisions are reviewed deferentially with due recognition for the agency's technical expertise); *Pine Tree Tel. & Tel. Co. v. Pub. Utils. Comm'n*, 631 A.2d 57, 61 (Me. 1993) ("We are particularly reluctant to substitute our judgment for that of the [C]ommission

because of the institutional deference we pay to its expertise; we are not a super-commission.").

[¶20] Lastly, we reject Enhanced's argument that a public interest criterion is a "rudderless" standard that is unreasonably difficult to understand. A petitioner has the burden of proof to establish that granting the CPCN is in the public convenience and necessity, i.e., has some benefit to the public and not merely its own business interest. *See In re Chapman*, 151 Me. 68, 71, 116 A.2d 130, 132 (1955) ("[T]he convenience and necessity, proof of which the statute requires, is the convenience and necessity of the public, as distinguished from that of any individual, or group of individuals." (quoting *In re Stanley*, 133 Me. 91, 93, 174 A. 93, 94-95 (1934)). Such a standard is a lawful requirement that comports with the statute, regulation, and federal law. *See Level 3 Commc'ns of Va. v. State Corp. Comm'n*, 604 S.E.2d 71, 75 (Va. 2004) (rejecting argument that a broad public interest standard gave the Commission "unfettered discretion" to deny a CPCN petition and concluding that such a broad standard did not amount to an unlawful barrier pursuant to 47 U.S.C.S. § 253(a) (LEXIS)).

[¶21] The Commission, based on Enhanced's own representations about its motivations to seek a CPCN, concluded that granting the petition was

not in the public convenience and necessity. Because the decision comported with the applicable regulation, federal law, and the evidence presented to the Commission, we affirm the Commission's order.

The entry is:

> Order of the Public Utilities Commission affirmed.

---

Sean M. Galvin, Esq., FairPoint Communications, Manchester, New Hampshire, and Catherine R. Connors, Esq. (orally), Pierce Atwood LLP, Portland, for appellant Enhanced Communications of Northern New England, Inc.

Jordan D. McColman, Esq. (orally), and Mitchell M. Tannenbaum, Esq., Public Utilities Commission, Augusta, for appellee Public Utilities Commission

Robin A. Casey, Esq., Enoch Kever PLLC, Harpswell, for appellee Time Warner Cable Information Systems, LLC

Elizabeth J. Wyman, Esq. (orally), and Robert A. Creamer, Esq., Office of the Public Advocate, Augusta, for appellee Office of the Public Advocate

Public Utilities Commission docket number 2015-00185
FOR CLERK REFERENCE ONLY