MAINE SUPREME JUDICIAL COURT                                 Reporter of Decisions
Decision:      2024 ME 11
Docket:        PUC-23-101
Argued:        December 5, 2023
Decided:       January 30, 2024

Panel:         STANFILL, C.J., and MEAD, JABAR, CONNORS, and DOUGLAS, JJ.

OFFICE OF THE PUBLIC ADVOCATE

v.

PUBLIC UTILITIES COMMISSION

CONNORS, J.

[¶1]  The Office of the Public Advocate (OPA) appeals an order of the Public Utilities Commission extending a waiver of the standard depreciation rate for the Maine Water Company - Millinocket Division (MWC).  The OPA asserts three claims: (1) the Commission legally erred when it applied Chapter 110 of its rules to waive the depreciation rate set forth in Chapter 68 because Chapter 68 contains its own waiver provision; (2) the Commission abused its discretion and set unjust and unreasonable rates by approving an arbitrarily low depreciation expense; and (3) the Commission relied on information not included in the evidentiary record.  We disagree with the OPA as to its first two arguments, conclude that the third argument is waived, and affirm the Commission's order.

## I. BACKGROUND

[¶2]   The following background is drawn from the Commission's February 2, 2023, order, other Commission decisions, and filings made in those proceedings.[1]

[¶3]  The standard depreciation rates for water utilities are set forth in Chapter 68 of the Commission's rules.   65-407 C.M.R. ch. 68 (effective May 4, 1996).   Beginning in February 2003, the Commission granted MWC waivers of the standard rates set forth in that Chapter based on declining consumption, due in part to the bankruptcy of a major customer, the Great Northern Paper Company.[2]

---

[1]  The OPA submitted a supplement of legal authorities consisting of previous Commission decisions relating to the MWC rates dating from 1997 to 2020. *See* M.R. App. P. 8(n).  In addition to the Commission's decisions themselves, we may take judicial notice of the existence and content of the filings made in these regulatory proceedings. *See Town of Mount Vernon v. Landherr*, 2018 ME 105, ¶ 14, 190 A.3d 249 (stating that the Court may take judicial notice of an administrative body's decisions and noting that a "court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings"(citation and quotation marks omitted)).

[2]  The first waiver lasted through 2005 and allowed MWC to cap its recorded depreciation expense at $100,000 instead of the $180,000 calculated using the Chapter 68 (at times referred to by the Commission as 680) method. *Consumers Me. Water Co. - Millinocket Div.*, Request for Waiver of Chapter 680 Depreciation Rates, No. 2003-00044, Order Approving Waiver (Me. P.U.C. Feb. 25, 2003). The OPA intervened in the proceeding but did not object to the proposed waiver. *Id.*  In March 2005, MWC requested an extension of the February 2003 waiver. *Consumers Me. Water Co. - Millinocket Div.*, Request for Waiver of Chapter 680 Depreciation Rates, No. 2003-00044, Order Extending Waiver (Me. P.U.C. May 18, 2005).  The OPA did not object, and the Commission granted the waiver through 2007. *Id.*  During MWC's subsequent rate proceeding in 2006, the Commission approved a stipulation between MWC and the OPA for a two-step return to full Chapter 68 depreciation rates. *Aqua Me., Inc. – Millinocket*, To Increase Revenue in the Millinocket Division by a Step One Increase of $105,809 OR 9.58% and a Step Two Increase of $37,874 OR 3.43%, Order Approving Stipulation (Me. P.U.C. June 1, 2006).  This return to standard Chapter 68 rates did not last.  MWC requested

[¶4] Starting in 2014, the Commission also granted a request for an infrastructure surcharge from MWC for various projects to replace infrastructure.[3] *Me. Water Co. - Millinocket Div.*, Request for Approval of Water Infrastructure Surcharge, No. 2014-00307, Order (Me. P.U.C. Oct. 21, 2014).[4]

[¶5] In February 2022, MWC applied to the Commission to increase its rates by 14.47% in its Millinocket division. MWC used the previously granted depreciation waiver in its proposed rate model, which the Commission

---

another waiver, which the Commission granted without objection from the OPA in January 2009. *Aqua Me., Inc. - Millinocket Div.*, Request for Waiver of Chapter 680 Depreciation Rates, No. 2008-00513, Order Approving Waiver (Me. P.U.C. Jan. 13, 2009). MWC requested extensions of that waiver, which the Commission granted in 2011 and 2014 with either a stipulation or no objection from the OPA. *Aqua Me., Inc. - Millinocket Div.*, Proposed Rate Change to Increase Revenue by $99,026 or 8.74%, No. 2011-00108, Order Approving Stipulation (Me. P.U.C. Aug. 12, 2011); *The Me. Water Co. - Millinocket Div.*, Proposed Rate Change to Increase Revenue by $99,026 or 8.74%, No. 2011-00108, Order Approving Extension of Waiver (Me. P.U.C. Apr. 29, 2014). The 2014 waiver extended the $100,000 depreciation cap until MWC's next rate case. *The Me. Water Co. - Millinocket Div.*, Proposed Rate Change to Increase Revenue by $99,026 or 8.74%, No. 2011-00108, Order Approving Extension of Waiver (Me. P.U.C. Apr. 29, 2014).

[3] An infrastructure surcharge is a mechanism for incorporating into the utility's rate base between rate cases the costs of construction of infrastructure projects necessary to the transmission, distribution, and treatment of water. *See* 65-407 C.M.R. ch. 675, §§ 5(A), 6 (effective June 21, 2013); *The Me. Water Co. - Millinocket Div.*, Request for Approval of Water Infrastructure Surcharge, No. 2020-00325, Order (Me. P.U.C. Dec 15, 2020).

[4] The Commission granted five more infrastructure surcharges in 2015, 2016, 2018, March 2020, and December 2020. *Me. Water Co. - Millinocket Div.*, Request for Approval of Water Infrastructure Charge, No. 2015-00330, Order (Me. P.U.C. Nov. 18, 2015); *Me. Water Co. - Millinocket Div.*, Request for Approval of Water Infrastructure Charge, No. 2016-00262, Order (Me. P.U.C. Nov. 30, 2016); *Me. Water Co. - Millinocket Div.*, Request for Approval of Water Infrastructure Charge, No. 2017-00322, Order (Me. P.U.C. Jan. 12, 2018); *Me. Water Co. - Millinocket Div.*, Request for Approval of Water Infrastructure Charge, No. 2020-00023, Order (Me. P.U.C. Mar. 2, 2020); *Me. Water Co. - Millinocket Div.*, Request for Approval of Water Infrastructure Charge, No. 2020-00325, Order (Me. P.U.C. Dec. 15, 2020).

4

interpreted as a request for an extension of the waiver and asked MWC to file that request in a separate docket.

[¶6] In October 2022, MWC complied with the Commission's request and filed separately for an extension of the waiver. The OPA petitioned to intervene, filed comments opposing the extension, and served data requests on MWC. The OPA did not request further processes, such as prefiled testimony or an evidentiary hearing.

[¶7] In their report, the hearing examiners recommended that the Commission grant the waiver extension with a direction to MWC to submit a plan detailing its return to full Chapter 68 depreciation rates with its next rate case, or by January 2026 if MWC had not initiated a rate case by then. In making their recommendation, the examiners referenced MWC's filings and responses to the OPA's comments and data requests. They noted that not granting the waiver capping depreciation expense at $100,000 would add almost $200,000 of additional depreciation expense to consumers' rates and concluded that it was reasonable to provide MWC with an opportunity to consider a phased approach to eliminating the longstanding waiver and to seek comment from its customers and stakeholders as to the impacts of returning to full depreciation rates.

[¶8]   The OPA filed exceptions to the examiners' report.  It did not challenge the examiners' observation that the lack of a cap would add $200,000 of depreciation expense into the rates and did not argue that any conclusion in the report was based on material not included in the record.  Instead, it argued that the recommended phase-in would be too slow because, by deferring inclusion of depreciation expense beyond the $100,000 cap, the burden of paying the deferred expense would fall on future ratepayers.

[¶9]   The Commission granted the waiver extension in an order dated February 2, 2023.  In its order, the Commission noted "that the OPA has raised concerns that warrant careful consideration," because, among other reasons, "understating depreciation is not typically appropriate as it pushes costs into the future."  Nonetheless, the Commission, referencing economic conditions in the region, concluded that the financial impact of adding another $200,000 in depreciation expense would be unreasonably burdensome for ratepayers.  The Commission therefore granted the waiver extension but concluded that a phased-in approach that would allow for comment from Millinocket customers and stakeholders was appropriate and adopted the examiners' recommendation that MWC submit a plan to full depreciation in its next rate proceeding or by January 31, 2026, whichever is earlier.

6

[¶10]  Pursuant to 65-407 C.M.R. ch. 110, § 11(D) (effective May 4, 1996), the OPA petitioned the Commission to reconsider extending the waiver.  In addition to the arguments made in its exceptions to the hearing examiners' report, the OPA argued that the reference to economic conditions in the region and the characterization of the impact of adding $200,000 in depreciation expense as unreasonably burdensome to ratepayers was unsupported by materials in the record because, according to the OPA, there "is no evidentiary record in this proceeding."

[¶11]  By operation of law, the Commission denied the OPA's petition for reconsideration, 65-407 C.M.R. ch. 110, § 11(D), and the OPA timely appealed. 35-A M.R.S. § 1320 (2023); M.R. App. P. 2B(c)(1); M.R. App. P. 22.

## II.  DISCUSSION

**A.    Our standard of review as to the OPA's first two arguments is deferential.**[5]

[¶12]  As to the OPA's first challenge, we accord "considerable deference" to the Commission's interpretation of its own rules, *NextEra Energy Res., LLC v. Me. Pub. Utils. Comm'n*, 2020 ME 34, ¶ 26, 227 A.3d 1117, and engage in a

---

[5]  As discussed *infra* ¶¶ 24-27, we reject the OPA's third challenge, relating to the scope of the record, on waiver grounds.  We resolve such questions as to justiciability without deference to the agency's position on appeal.  *See Cent. Me. Power Co. v. Pub. Utils. Comm'n*, 2014 ME 56, ¶¶ 20-21, 90 A.3d 451; *Verizon New England, Inc. v. Pub. Utils. Comm'n*, 2005 ME 16, ¶ 15, 866 A.2d 844.

two-step inquiry. First, we determine "de novo whether the [rule] is reasonably susceptible of different interpretations and therefore ambiguous." *Enhanced Commc'ns of N. New England, Inc. v. Pub. Utils. Comm'n*, 2017 ME 178, ¶ 7, 169 A.3d 408 (quotation marks omitted). If the language is clear, we apply the regulation's plain language. *Id.* If the language is ambiguous, we review "the Commission's construction of the ambiguous [rule] for reasonableness," *Taylor v. Pub. Utils. Comm'n*, 2016 ME 71, ¶ 6, 138 A.3d 1214, and defer to the Commission's interpretation "unless the [rule] plainly compels a contrary result." *Cent. Me. Power Co. v. Pub. Utils. Comm'n*, 2014 ME 56, ¶ 18, 90 A.3d 451 (quotation marks omitted).

[¶13] The OPA's second challenge attacks the reasonableness of the Commission's decision to grant an extension of a depreciation expense waiver in anticipation of a gradual return to full depreciation over time. Our review of such a ratemaking decision is highly deferential. *See New England Tel. & Tel. Co. v. Pub. Utils. Comm'n*, 470 A.2d 772, 776 (Me. 1984) ("The Commission has broad discretion in selecting among various rate-making methodologies, provided that they are reasonably accurate. The Commission is not required to manipulate its methodologies to eliminate every shred of suggested inaccuracy." (citation omitted)). "We defer to the Commission's choice of

8

ratemaking methodologies or techniques. Only when the Commission abuses the discretion entrusted to it, or fails to follow the mandate of the legislature, or to be bound by the prohibitions of the constitution, can this court intervene." *Am. Ass'n of Retired Persons v. Pub. Utils. Comm'n*, 678 A.2d 1025, 1029 (Me. 1996) (citation and quotation marks omitted).

**B.    The Commission properly applied Chapter 110 when determining whether to grant the waiver.**

[¶14]  The OPA argues that Chapter 68 contains its own waiver provision, and, therefore, the Commission erred when it applied Chapter 110 to waive the Chapter 68 depreciation rates. *See* 65-407 C.M.R. ch. 68, ch. 110, § 1(C). We disagree. A plain-language reading of the regulatory text in Chapter 68 shows that it contains no waiver provision.

[¶15]  Section 1(C) of Chapter 110 provides in relevant part:

The Commission may grant a request for a substantive deviation or waiver upon a finding of good cause or that compliance would be unduly burdensome and a finding that the deviation or waiver is not inconsistent with the purposes of the chapter or applicable statute from which the deviation or waiver is sought. This subsection shall not apply to any other rule where a conflicting waiver or modification procedure is provided.

[¶16]  Unlike section 1(C) of Chapter 110, the words "waive" or "modify" never appear in Chapter 68. Instead, Chapter 68 sets out a standard depreciation formula in section 1(C), and lists maximum depreciation rates on

various classes of assets in section 2. 65-407 C.M.R. ch. 68, §§ 1(C), 2. The text then "allow[s] a utility to use *alternative* depreciation rates which may be justified using one or more of the methods described in two manuals." 65-407 C.M.R. ch. 68, § 3 (emphasis added).

[¶17] Multiple dictionaries define "alternative" as providing a choice between multiple options. *Alternative*, New Oxford American Dictionary (3d ed. 2010) ("available as another possibility"); *Alternative*, Webster's New World College Dictionary (5th ed. 2016) ("providing or being a choice between two or among more than two things"). In contrast, "waive" means to "refrain from applying or enforcing." *Waive*, New Oxford American Dictionary (3d ed. 2010). "Modify" means to "make partial or minor changes to (something)." *Modify*, New Oxford American Dictionary (3d ed. 2010).

[¶18] Nothing in Chapter 68 authorizes the Commission to change or refrain from enforcing the rule. Instead, it provides a standard depreciation rate formula in section one, and if a utility believes that the formula does not adequately account for its depreciation expense, it may request to use an alternative outlined in section three. In the absence of a waiver provision specific to the standard and alternative approaches in Chapter 68, the general waiver rule set forth in Chapter 110, § 1(C) applies.

[¶19]  Notably, in its adoption of Chapter 110, the Commission looked to specific examples of rules that contain their own waiver or modification provision: Chapters 120, 280, and 65.[6] *Me. Pub. Utils. Comm'n*, Amendments to the Rules of Practice and Procedure (Chapter 110), No. 89-321, Order Adopting Rule and Statement of Factual and Policy Basis (Me. P.U.C. Mar. 19, 1990).  Each listed rule shows that when the Commission intends to include a waiver or modification provision, it does so explicitly.  *See* 65-407 C.M.R. ch. 120, § 9 (effective May 4, 1996) ("Where good cause exists, the Commission, its Administrative Director, its Assistant Administrative Director, or the Hearing Examiner assigned to the proceeding may *waive* any requirement of this Rule." (emphasis added)); 65-407 C.M.R. ch. 280, § 15 (effective Mar. 1, 1989) ("Where good cause exists, the Commission, the Administrative Director, the Director of Technical Analysis, or the Hearing Examiner assigned to a proceeding involving the subject matter of the *waiver* may grant the requested *waiver*, provided that the granting of the waiver would not be inconsistent with the intent of this Chapter.  The *waiver* shall be applicable only to the specific application under consideration." (emphasis added)); 65-407 C.M.R. ch. 886, § 7 (effective

---

[6]  The order adopting Chapter 110 also references Chapters 81 and 86, neither of which are part of the Commission's rules anymore.  *See generally* 65-407 C.M.R. chs. 25-910.  Despite not being mentioned in the order adopting Chapter 110, Chapter 886 also contains explicit waiver language and is relevant to the analysis.  65-407 C.M.R. ch. 886, § 7 (effective Nov. 25, 2008).

Nov. 25, 2008) ("[T]he Commission may, for good cause, *waive* any requirement of this Chapter that is not required by statute." (emphasis added)); 65-407 C.M.R. ch. 65, § 6(E) (effective May 4, 1996) ("A utility or any person affected by this rule may apply to the Commission for *exemption* from any provision of this Chapter for good cause.  The request shall contain a complete explanation and justification for the exemption." (emphasis added)).[7]

[¶20]  In sum, Chapter 68 contains no waiver provision, only a standard rate formula and an alternative.  Hence, the Commission properly applied the general waiver provision contained in Chapter 110.

## C.  The Commission did not abuse its discretion when it extended the waiver in anticipation of a gradual movement toward removal of the cap on depreciation expenses.

[¶21]  The OPA argues that the Commission abused its discretion and set unjust and unreasonable rates by approving an arbitrarily low depreciation expense because allowing for a cap on depreciation expenses is contrary to good ratemaking principles, such as distributing the costs and benefits of services so that, as nearly as possible, the same ratepayers who are charged for

---

[7]  Chapter 65 differs from the other chapters' use of "waiver" by using "exemption," which is defined as "the process of freeing or a state of being free from an obligation or liability imposed by others." *Exemption*, New Oxford American Dictionary (3d ed. 2010).  The definition of "exemption" is much closer to a waiver than to Chapter 68's "alternative."

Chapter 65-407 C.M.R. ch. 886 has been repealed.  *Me. Pub. Utils. Comm'n*, Repeal of Chapter 886, Energy Infrastructure Corridors, No. 2022-00222, Order Repealing Rule (Me. P.U.C. Oct. 18, 2022).

12

a service will receive the benefit. *See New England Tel. & Tel. Co.*, 470 A.2d at 782.

[¶22] But not only is the Commission given broad latitude in setting rates to meet such objectives, *see id.*, this argument misses the point. The question is not whether depreciation expenses should be set based on a sound methodology and designed so that current ratepayers are generally responsible for the costs of serving them. The Commission agreed that this is the case. Rather, the question is whether good cause existed temporarily to cap the depreciation expense that would otherwise be charged to the ratepayers and to use a phased-in approach when returning to a full charge of those expenses.

[¶23] Title 35-A M.R.S. § 1306(1) (2023) provides that in determining the justness and reasonableness of an order setting rates, the Commission "shall assure rate design stability." At oral argument, the OPA did not dispute that full depreciation would add nearly $200,000 to expenses MWC would seek to pass on to its consumers, thereby increasing rates by 37.8% instead of the currently proposed 14.47%. By extending the cap temporarily and anticipating a gradual movement toward reduction of the cap after MWC investigates the impact of this movement on its customers, the Commission's decision comports with this statutory rate-setting goal and avoids rate shock. We cannot say that

the Commission's decision to do so fell outside the broad bounds of the Commission's discretion in setting rates.

**D.    The OPA waived its argument that no record exists.**

[¶24]   The OPA next argues that the Commission failed to create an evidentiary record in this proceeding and that the Commission's order is therefore unsupported by evidence in the record.  While the Commission and MWC assert that the evidentiary record includes everything in the administrative record, the OPA argues that because the Commission did not make any rulings on the admissibility of evidence, none of the parties' filings were formally admitted for consideration and, therefore, there is no record on which the Commission may base its decision.  The Commission argues that because the OPA failed to raise the issue with the Commission, its argument is waived on appeal.  We agree.

[¶25]   "In order to preserve an issue for appellate review, a party must timely present that issue to the original tribunal; otherwise, the issue is deemed waived."  *Brown v. Town of Starks*, 2015 ME 47, ¶ 6, 114 A.3d 1003.  This requirement "ensures that the decision-making body has the opportunity to consider the issue and correct any perceived error in order to avoid having its decision vacated or remanded after an appeal."  *Id.*; *see also* Alexander, *Maine*

*Appellate Practice* § 402(a) at 310 (5th ed. 2018) (the preservation rule "gives the [decision-maker] and other parties notice and opportunity to correct any perceived error during the [proceeding] to avoid the result being vacated or remanded for further proceedings after appeal"); *York Hosp. v. Dep't of Health & Hum. Servs.*, 2008 ME 165, ¶ 19, 959 A.2d 67 ("In order to preserve an issue on appeal, that issue needs to be raised at the administrative agency level.").

[¶26] The OPA knew that the hearing examiners' report relied on the parties' filings and MWC's data responses to the OPA, but in its exceptions to the examiner's report, the OPA made no challenge to the recommendation and did not assert that this reliance was improper. Under these circumstances, the OPA's challenge at the reconsideration level before the Commission came too late. *Cf. Dillon v. Select Portfolio Servicing*, 630 F.3d 75, 80 (1st Cir. 2011). Just as courts are entitled to expect parties to incorporate "all relevant arguments in the papers that directly address a pending motion," so is the Commission. *See CMM Cable Rep, Inc. v. Ocean Coast Props., Inc.*, 97 F.3d 1504, 1526 (1st Cir. 1996). The Commission is entitled to expect parties to incorporate all relevant arguments in their exceptions to the examiners' reports.

[¶27] We acknowledge the OPA's point that not all information filed or generated during a Commission proceeding is necessarily a part of the

evidentiary record. The Commission's regulations are unclear on this point, and, as we recently stated, it would be prudent for the Commission to clarify its rules as to what materials are deemed a part of the record when there is no evidentiary hearing. *See Off. of the Pub. Advoc. v. Pub. Utils. Comm'n*, 2023 ME 77, ¶ 32, --- A.3d ---. In this case, however, we need not address whether this lack of clarity violated any of the OPA's procedural rights because the OPA needed to raise this procedural issue earlier in the proceedings.[8]

---

[8] Although we need not consider the OPA's argument, we note that the two aspects of the Commission's reasoning, which the OPA asserts are unsupported by an evidentiary record, are the impact of eliminating the waiver and that Millinocket's economic condition continues to result in a decline in consumption and revenue. But the OPA does not contest that the impact of an immediate inclusion of depreciation expense beyond the rate cap would be an additional $200,000 in rates imposed on a small number of ratepayers already exposed to a significant rate hike as reflected in the sister rate case—a proceeding of which we not only can take judicial notice of the filings made therein but which the OPA itself has cited in its arguments before the Commission in the instant proceeding. Office of the Public Advocate Comments at 4-5, *The Me. Water Co. - Millinocket Div.*, Request for Approval of Extension of Waiver of Chapter 68, Water Utility Depreciation Rates, No. 2022-00319, (Me. P.U.C. Nov. 15, 2022). We also do not understand the OPA to be arguing that Millinocket is not, in fact, suffering from economic difficulties. Rather, we understand the OPA to be arguing that, as a technical matter, there is nothing in the record in this proceeding specifying Millinocket's economic condition because neither the hearing examiners nor the Commission formally identified the materials contained in the evidentiary record, and, therefore, no evidentiary record exists. There is a lack of clarity as to what is contained in the evidentiary record when no evidentiary hearing is held regarding discovery materials such as data responses and statements made in technical conferences. At a minimum, however, the evidentiary record consisted of materials such as the request for the waiver itself, which noted MWC's declining revenues and lagging economy, and to which the OPA never responded with any evidence or argument that, while MWC obtained revenue from infrastructure surcharges, its revenue from water consumption continued to decline. We also note that although the proponent of agency action ordinarily bears the burden of proof, on appeal, if an appellant argues not that the evidence filed in the proceeding supporting an agency decision failed to meet the substantial evidence threshold but rather that, technically, that piece of evidence should not be deemed to have been formally admitted into the record, to prevail, the appellant must show how that procedural lacuna caused prejudice. *See Morgan v. Paine*, 312 A.2d 178, 185 (Me. 1973) (discussing the demise of the "sporting theory of justice"); *Communist Party of U.S. v. Subversive Activities Control Bd.*, 367 U.S. 1, 30-31 (1961) (concluding that a challenge to an administrative body's decision was waived, noting that allowing withholding of an argument that

16

The entry is:

Judgment affirmed.

William S. Harwood, Esq., Kristina R. Winther, Esq., and Brian T. Marshall, Esq. (orally), Office of the Public Advocate, Augusta, for appellant Office of the Public Advocate

Amy B. Mills, Esq. (orally), and Jordan McColman, Esq., Maine Public Utilities Commission, Augusta, for appellee Maine Public Utilities Commission

Amy K. Olfene, Esq. and Esther A. Labrado, Esq. (orally), Drummond Woodsum, Portland, for appellee The Maine Water Company

Public Utilities Commission docket number 2022-319
FOR CLERK REFERENCE ONLY

could have corrected an error had the argument been made earlier would promote the sporting theory of justice).